**PERKINS COIE LLP**
Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
Anna Mouw Thompson, *pro hac vice*
AnnaThompson@perkinscoie.com
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Timothy M. Carter, Bar No. 335212
TCarter@perkinscoie.com
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

Attorneys for Defendants NATURALCYCLES USA CORPORATION AND NATURALCYCLES NORDIC AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

S.A., S.S. A.S. and M.F., individually and on behalf of all other similarly situated,

Plaintiffs,

v.

NATURALCYCLES USA CORPORATION AND NATURALCYCLES NORDIC AB,

Defendants.

Case No. 3:25-cv-10421-WHO

**DEFENDANTS NATURALCYCLES USA CORPORATION AND NATURALCYCLES NORDIC AB'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STAY PROCEEDINGS, AND DISMISS S.A. AND A.S.'S CLASS CLAIMS**

Judge: Hon. William H. Orrick
Date: June 17, 2026
Time: 2:00pm
Location: Courtroom 2, 17th Floor

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION .................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 2

I. INTRODUCTION ........................................................................................................ 2

II. STATEMENT OF ISSUES TO BE DECIDED ............................................................ 2

III. BACKGROUND ............................................................................................................ 3

A. Natural Cycles and Plaintiffs' Complaint ............................................................ 3

B. S.A. and A.S.'s Agreement to the Natural Cycles Terms .................................... 3

C. S.A. and A.S.'s Agreement to Arbitrate and Waive Class Claims ....................... 5

IV. LEGAL STANDARD .................................................................................................... 7

V. ARGUMENT ................................................................................................................ 8

A. S.A. and A.S. entered into a valid and binding arbitration agreement.................. 8

1. S.A. and A.S. had reasonably conspicuous notice of the Terms............. 10

2. S.A. and A.S. unambiguously manifested their assent to the Terms. ...... 12

B. The parties delegated to the arbitrator the question of whether S.A. and A.S.'s claims are arbitrable. ............................................................................ 12

C. Even if the parties had not delegated the question of arbitrability, S.A. and A.S.'s claims are arbitrable. ............................................................................ 13

1. The claims fall within the scope of the arbitration agreement. ................ 13

2. Natural Cycles' arbitration agreement is not unconscionable................. 14

i. The arbitration agreement is not procedurally unconscionable. ........................................................................ 14

ii. The arbitration agreement is not substantively unconscionable. ........................................................................ 15

D. The Court should stay this case. ........................................................................ 16

E. S.A. and A.S.'s class claims should be dismissed as waived. ............................ 17

VI. CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 18

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 7

*Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*,
No. 5:13-CV-02664-EJD, 2014 WL 3371842 (N.D. Cal. July 9, 2014) .......... 8

*Baghdasarian v. Macy's Inc.*,
No. 24-3438, 2025 WL 999082 (9th Cir. Apr. 3, 2025) .......... 14

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 10

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......... 14

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d 1097 (C.D. Cal. 2002) .......... 17

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 7, 13

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025) .......... 10

*Costa v. Apple, Inc.*,
No. 23-CV-01353-WHO, 2024 WL 6905721 (N.D. Cal. Jan. 19, 2024) .......... 16

*Crook v. Wyndham Vacation Ownership, Inc.*,
No. 13-CV-03669-WHO, 2015 WL 4452111 (N.D. Cal. July 20, 2015) .......... 12

*Davidson v. Apple, Inc.*,
No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) .......... 15

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .......... 8

*Donovan v. Coinbase Glob., Inc.*,
649 F. Supp. 3d 946 (N.D. Cal. 2023) .......... 14

*Edwards v. Metro. Life Ins. Co.*,
No. C 10-03755 CRB, 2010 WL 5059553 (N.D. Cal. Dec. 6, 2010) ........................................8

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013)........................................................................................7

*G.G. v. Valve Corp.*,
799 F. App'x 557 (9th Cir. 2020) ..................................................................................13

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ......................................................................9, 11

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)........................................................................................................8

*Greenberg v. Amazon.com, Inc.*,
No. 20-CV-02782-JSW, 2021 WL 7448530 (N.D. Cal. May 7, 2021) ...................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................................................................................................8, 12

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)........................................................................................................7

*In re Ring LLC Priv. Litig.*,
No. CV 19-10899-MWF, 2021 WL 2621197 (C.D. Cal. June 24, 2021)................................11

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018) ...................................................................17, 18

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024)...........................................................................10, 11, 16

*Lag Shot LLC v. Facebook, Inc.*,
545 F. Supp. 3d 770 (N.D. Cal. 2021) .........................................................................14

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017).............................................................................................9

*Mohamed v. Uber Techs.*,
848 F.3d at 1211 (9th Cir. 2016)...................................................................................14

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305 (2005)......................................................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)..........................................................................................................7

*Moyer v. Chegg, Inc.*,
No. 22-CV-09123-JSW, 2023 WL 4771181 (N.D. Cal. July 25, 2023)....................................9

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)..........................................................................9, 11, 12

*OTO, L.L.C. v. Kho*,
8 Cal. 5th 111 (2019) ........................................................................................16

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010).............................................................................................12

*Sarhadi v. Pear Health Labs, Inc.*,
No. 24-CV- 07921-TLT, 2025 WL 1350033 (N.D. Cal. Apr. 18, 2025)..............................9, 11

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021)....................................................................................11

*Siert v. Spiffy Franchising, LLC*,
758 F. Supp. 3d 1142 (N.D. Cal. 2024) ......................................................................14, 15

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .........................................................................................8, 16

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ......................................................................14

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016)..................................................................................14

*Turbin v. Thumbtack, Inc.*,
No. 25-cv-03388-EMC, 2025 WL 3013972 (N.D. Cal. Oct. 28, 2025) ..................................15

*United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*,
750 F.2d 1422 (9th Cir. 1985)..................................................................................17

*Wolf v. Langemeier*,
No. 2:09-CV-03086-GEB-EFB, 2010 WL 3341823 (E.D. Cal. Aug. 24, 2010)................16, 17

*Wood v. Verve Grp. Eur. GMBH*,
No. 5:24-cv-04909, Dkt. No. 44 (N.D. Cal. Dec. 9, 2025)...............................................15

**STATUTES**

9 U.S.C. § 2 ..............................................................................................................7

9 U.S.C. § 3 ............................................................................................................16

9 U.S.C. § 4 .......................................................................................................12, 17

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, June 17, 2026, at 2:00 p.m., or as soon thereafter as this motion may be heard in the above-titled Court, located at 450 Golden Gate Avenue, 17th Floor, Courtroom 2, San Francisco, CA 94102, Defendants NaturalCycles USA Corporation and NaturalCycles Nordic AB (collectively, "Natural Cycles") will and hereby do move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, for an order compelling S.A. and A.S. to arbitrate their claims in their Class Action Complaint ("Complaint") (Dkt. No. 1) against Natural Cycles and staying this case (the "Motion"). With this Motion, Natural Cycles also seeks dismissal of S.A. and A.S.'s class claims as a result of their agreement to a binding arbitration agreement and class action waiver.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declarations of Fróði Karlsson ("Karlsson Decl.") and Timothy M. Carter ("Carter Decl."), and the exhibits attached thereto, all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing on this Motion or otherwise.

**STATEMENT OF RELIEF SOUGHT**

Natural Cycles seeks an order compelling arbitration of S.A. and A.S's claims in the Complaint, staying this action pending the outcome of arbitration, and dismissing S.A. and A.S.'s class claims.

Dated: March 30, 2026

**PERKINS COIE LLP**

By: */s/ Nicola C. Menaldo*
Nicola C. Menaldo, *pro hac vice*
Anna Mouw Thompson, *pro hac vice*
Timothy M. Carter, Bar No. 335212

NATURALCYCLES USA CORPORATION
AND NATURALCYCLES NORDIC AB

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Natural Cycles respectfully asks this Court to compel S.A. and A.S. to arbitration pursuant to the binding arbitration agreements they entered into when signing up for and creating Natural Cycles accounts and proceeding to use Natural Cycles services. In so doing, S.A. and A.S. each unequivocally agreed to Natural Cycles' terms of service ("Terms"), which contain both a binding arbitration agreement that covers the claims here and a class action waiver that precludes them from pursuing any lawsuit in court—much less a putative class action lawsuit.

Natural Cycles does not seek to compel S.S. or M.F. to arbitration,[1] but asks the Court to stay their claims along with the rest of this case pending the outcome of arbitration. S.S. and M.F. bring the same claims as S.A. and A.S., rely on the same factual allegations, and seek the same relief on behalf of a class that is more similarly situated to S.A. and A.S. A stay is necessary to conserve party and Court resources, which may otherwise be spent litigating substantially the same issue in two forums. A stay is also further needed to avoid inconsistent outcomes, including competing and potentially irreconcilable relief.

Finally, the Court should dismiss S.A. and A.S.'s class claims, which they have brought in breach of their agreement to Natural Cycles' Terms.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether S.A. and A.S. have entered into a valid arbitration agreement;
2. Whether the arbitration agreement delegates to the arbitrator the question of whether S.A. and A.S.'s claims are arbitrable;
3. Whether, even if the parties had not delegated the question of arbitrability, S.A. and A.S.'s claims fall within the arbitration agreement;
4. Whether S.A. and A.S. have failed to carry their burden to demonstrate that the arbitration agreement is both procedurally and substantively unconscionable;
5. Whether this action should be stayed pending arbitration of S.A. and A.S.'s claims; and

[1] S.S. alleges that she never created a Natural Cycles account. Compl. ¶ 171. M.F. opted out of arbitration. *See* Karlsson Decl. ¶ 24.

6. Whether S.A. and A.S. agreed to waive their class claims, such that their class claims should be dismissed.

## III. BACKGROUND

### A. Natural Cycles and Plaintiffs' Complaint

The Natural Cycles app is a class II FDA-cleared medical device intended to be used by women above 18 years to monitor fertility. *See* Compl. ¶ 2. To use the Natural Cycles mobile application for fertility tracking, users must create an account. Karlsson Decl. ¶ 4.

This action arises from Plaintiffs' allegations that Natural Cycles unlawfully enabled third-party access to certain information that Plaintiffs provided through the use of the Natural Cycles website and/or mobile application. *See* Compl. ¶¶ 1–12.

### B. S.A. and A.S.'s Agreement to the Natural Cycles Terms

On April 13, 2023, and May 4, 2023, respectively, S.A. and A.S. created Natural Cycles accounts via the Natural Cycles website. Karlsson Decl. ¶¶ 6–7. The process for account creation via the Natural Cycles website was substantially the same at the times S.A. and A.S. created their accounts. *Id.* ¶ 10, Ex. A. In either circumstance, S.A. and A.S. would have needed to enter their respective email addresses and created and typed a password into a dialog box substantially similar to the one shown in Figure 1 below. *Id.*

**Figure 1**



After clicking "Create account or log in," S.A. and A.S. would have been presented with a "Before you start" screen asking them to "read and accept" several sets of terms, including the "Natural Cycles' Terms of Service and Privacy policy[.]" *Id.* ¶ 13, Ex. B. As shown in Figure 2 below,[2] the "Before you start" page would have directed S.A. and A.S. to the Natural Cycles Terms (and privacy policy) in single, standalone sentences in an uncluttered format, displayed on a white background, with blue hyperlinks of the same size as the surrounding text. *Id.*

**Figure 2**




To proceed with creating their accounts, S.A. and A.S. would have had to click a purple "Accept" button, which was visually distinguished from the "Decline" button and all other text on the page, as shown in Figure 3. *Id.* ¶ 14, Ex. B.

**Figure 3**




[2] The full image of the "Before you start" screen is contained in **Exhibit B** to the Karlsson Decl.

### C. S.A. and A.S.'s Agreement to Arbitrate and Waive Class Claims

When S.A. and A.S. created their accounts, the Terms of Service hyperlink directly referred users to the Natural Cycles Terms in effect as of July 8, 2022 ("July 2022 Terms"). *Id.* ¶ 18, Ex. C. The July 2022 Terms included a mandatory arbitration agreement that required S.A. and A.S. to arbitrate "[a]ny controversy or claim between [them] and [Natural Cycles] arising out of or relating in any way to [their] access or use of [Natural Cycles] Services[[3]], Products, Sites[[4]] or Webshop." *Id.*, Ex C, ¶ 14.1

Parties to the July 2022 Terms agreed that such arbitration was to be "conducted pursuant to the Commercial Arbitration Rules promulgated by the American Arbitration Association." *Id.* The Commercial Arbitration Rules, in turn, have required since at least September 2022 that gateway questions of arbitrability be decided by the arbitrator. Carter Decl., Ex. A, ¶ R-7(a).

The July 2022 Terms also included a class action waiver that specifically stated:

> BOTH YOU AND NATURAL CYCLES SPECIFICALLY WAIVE THE RIGHT TO ARBITRATE OR, IF EVER APPLICABLE, TO LITIGATE IN A COURT, ANY CLAIM OR DISPUTE AS A CLASS ACTION, EITHER AS A MEMBER OF A CLASS OR AS A REPRESENTATIVE, OR TO ACT AS A PRIVATE ATTORNEY GENERAL OR RELATOR.

Karlsson Decl., Ex C, ¶ 14.2.

Finally, the July 2022 Terms included a provision stating that continued use of Natural Cycles website or mobile application constituted binding acceptance of any later-revised terms. *Id.*, Ex. C, ¶ 4.1.

Natural Cycles updated its Terms on October 27, 2025 (the "October 2025 Terms"). Around the same time, it sent S.A. and A.S. an email at the email address associated with their accounts notifying them of the update. Karlsson Decl., ¶ 21 (the "Notice Email"). The Notice Email explained that Natural Cycles had "updated the arbitration agreement," which outlines the

[3] The July 2022 Terms define "Services" to include "Natural Cycles web and mobile application services." *Id.*
[4] The July 2022 Terms define "Sites" to include www.naturalcycles.com "and any website owned or managed by Natural Cycles." *Id.*

procedures for handling disputes. *Id.* Consistent with the July 2022 Terms, the Notice Email further explained that continued use of Natural Cycles constituted acceptance of the updated Terms. *Id.*

While S.A. and A.S. allegedly stopped using Natural Cycles in March of 2025 and February of 2024, respectively, Natural Cycles' records related to their log-in activity confirms that they in fact accessed Natural Cycles following the updates to Natural Cycles' Terms. *See id.* ¶ 23 (explaining that S.A. last opened the Natural Cycles app on January 16, 2026, and A.S. last opened the app on November 5, 2025). In so doing, S.A. and A.S. agreed to be bound by the October 2025 Terms.

Like the July 2022 Terms, the October 2025 Terms also include a mandatory arbitration agreement and class action waiver. *Id.*, Ex. D, ¶ 17. The binding arbitration agreement applies to "any dispute, claim, or controversy," excluding intellectual property and small claims disputes, "whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory . . . that arises from or relates to these Terms, the Products[[5]] or the Services[[6]], including . . . all privacy or data security claims[.]" *Id.*, Ex. D, ¶¶ 17.1, 17.4. The October 2025 Terms delegate to the arbitrator "the power to determine the question of arbitrability" including any "claims related to the arbitrability, validity, enforceability, or scope of these Terms." *Id.*, Ex. D, ¶ 17.4. The October 2025 Terms provide an opportunity to opt out of arbitration. *Id.*, Ex. D, ¶ 17.10. Although M.F. emailed Natural Cycles to opt out of arbitration, Natural Cycles has no indication that S.A. or A.S. did so. Karlsson Decl., ¶¶ 22, 24.

Like the July 2022 Terms, the October 2025 Terms include a class action waiver. The October 2025 class action waiver appears at both the top of preamble of the agreement and again in paragraph 17, in full caps surrounded by a black box. It states that agreement to the October 2025 Terms.

---

[5] The October 2025 define "Products" to include www.naturalcycles.com "and any other website . . . owned or provided by" Natural Cycles. *Id.*

[6] The October 2025 Terms define "Services" to include Natural Cycles' "mobile application" and "online services."

> PRECLUDE[S] YOU AND NATURAL CYCLES FROM SUING IN COURT OR PARTICIPATING IN A CLASS ACTION AND YOU AND NATURAL CYCLES AGREE THAT ARBITRATION WILL BE SOLELY ON AN INDIVIDUAL BASIS AND NOT AS A CLASS ARBITRATION, CLASS ACTION, OR ANY OTHER REPRESENTATIVE PROCEEDING. YOU AND NATURAL CYCLES ARE EACH WAIVING THE RIGHT TO TRIAL BY A JURY.

*Id.*, Ex. D.

Finally, as with the July 2022 Terms, and as also indicated in the Notice Email, the October 2025 Terms state that continued use of Natural Cycles website and mobile application constitutes binding acceptance of the terms. *Id.*, Ex. D, ¶ 3.

## IV. LEGAL STANDARD

The Federal Arbitration Act ("FAA") embodies a "national policy favoring arbitration," and its "overarching purpose . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 346 (2011) (cleaned up). A motion to compel arbitration pursuant to the FAA is intended to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The FAA provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. For that reason, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (citation omitted).

In deciding whether to compel arbitration, the district court's role is limited to determining: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "[G]ateway issues" of arbitrability "can be expressly delegated to the arbitrator where the 'parties clearly and unmistakably provide otherwise.'" *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "When the parties' contract delegates the arbitrability question to an

arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). If both conditions are met, the Court is required to compel arbitration and stay the court proceeding. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]the [FAA] leaves no place for the exercise of discretion by a district court . . . ."); *see also Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (holding that courts must issue a stay when compelling a case to arbitration).

S.A. and A.S., as the parties "resisting arbitration[,] bear[] the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Edwards v. Metro. Life Ins. Co*., No. C 10-03755 CRB, 2010 WL 5059553, at *4 (N.D. Cal. Dec. 6, 2010) (similar). In deciding this motion, the Court "may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Atlas Int'l Mktg., LLC v. Car-E Diagnostics, Inc.*, No. 5:13-CV-02664-EJD, 2014 WL 3371842, at *3 (N.D. Cal. July 9, 2014) (citations omitted).

## V. ARGUMENT

### A. S.A. and A.S. entered into a valid and binding arbitration agreement

S.A. and A.S. agreed to binding, individual arbitration and waived their right to pursue class-wide relief. Under both the July 2022 Terms and the October 2025 Terms, S.A. and A.S. agreed to arbitrate any controversy or claim with Natural Cycles that relates to or arises out of their use of the Natural Cycle's products, services, or platform—including their current claims arising from purported third-party access to information that S.A. and A.S. allegedly provided through their use of the Natural Cycles website and mobile application. *See* Karlsson Decl., Ex C, ¶ 14.1 (covering "[a]ny controversy or claim between [Plaintiffs] and [Natural Cycles] arising out of or relating in any way to your access or use of [Natural Cycles] Services, Products, Sites or Webshop."); *Id*., Ex. D, ¶¶ 17.1, 17.4 ("any dispute, claim, or controversy" excluding intellectual property and small claims disputes "whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory…that arises from or relates to these Terms, the Products or the Services, including … all privacy or data security claims").

To form a contract under California law, "there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). Federal courts generally find sign-in wrap agreements like the one S.A. and A.S. entered into with Natural Cycles enforceable. *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 923 (N.D. Cal. 2024) (explaining that "[i]n a sign-in wrap, or a 'modified clickwrap agreement,' a user is 'notified of the existence of the website's terms of use and advise[d] that by making some type of affirmative act, often by clicking a button, she is agreeing to the terms of service" and finding agreement enforceable (citation omitted)); *Sarhadi v. Pear Health Labs, Inc.*, No. 24-CV- 07921-TLT, 2025 WL 1350033, at *4 (N.D. Cal. Apr. 18, 2025) (explaining that in a sign-in wrap agreement, "a website notifies the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advises the user that he or she is agreeing to the terms of service when registering or signing up" and finding agreement enforceable (citation omitted)), *reconsideration denied*, No. 24-cv-07921-TLT, 2025 WL 4644296 (N.D. Cal. July 11, 2025). The relevant question when it comes to sign-in wrap agreements is whether "the existence of the terms was reasonably communicated to the user." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–76 (2d Cir. 2017) (applying California law and collecting cases). Whether a user chooses to read the hyperlinked terms is immaterial. *See Moyer v. Chegg, Inc.*, No. 22-CV-09123-JSW, 2023 WL 4771181, at *6 (N.D. Cal. July 25, 2023).

On a motion to compel arbitration, "a sign-in wrap agreement may be an enforceable contract based on inquiry notice if '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Sarhadi*, 2025 WL 1350033, at *5 (cleaned up). Both conditions are satisfied here, and the Court should compel S.A. and A.S. to arbitration. *See Oberstein*, 60 F.4th at 515 (affirming compelled arbitration where users, "when creating an account, signing into an account, and completing a purchase" were presented with "a confirmation button above which text informs the user that, by clicking on this button, 'you agree to our Terms of Use'").

**1. S.A. and A.S. had reasonably conspicuous notice of the Terms.**

"To be conspicuous, [a] notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). Both the "context of the transaction," as well as the "traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design," inform whether a website provides reasonably conspicuous notice of the terms of an agreement. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019 (9th Cir. 2024) (citations omitted).

***First***, as to the visual placement, the Terms were displayed on the "Before you start" screen in single, standalone sentences in an uncluttered format, displayed on a white background, with blue hyperlinks of the same size as the surrounding text. Karlsson Decl. ¶¶ 11–17, Ex. B. S.A. and A.S. were informed through conspicuous text at the very top of the page that they were "read[ing] and accept[ing]" certain conditions by continuing. They were then presented with a hyperlink to the Terms as one of the conditions for continuing. *Id.*

**Figure 2**




The purple "Accept" button presented at the bottom of the list of conditions comports with that initial explanation that users must agree to the Terms before they start. *Id.*

**Figure 3**




This sign-in flow and format are sufficient to satisfy the visual requirements of conspicuous notice to "a reasonably prudent Internet user[.]" *Keebaugh*, 100 F.4th at 1020 (citation omitted); *see, e.g.*, *Sarhadi*, 2025 WL 1350033, at *9 (enforcing arbitration agreement in sign-in wrap agreement where terms were hyperlinked in contrasting font color and appeared against an uncluttered screen); *In re Ring LLC Priv. Litig.*, No. CV 19-10899-MWF (RAOx), 2021 WL 2621197, at *5 (C.D. Cal. June 24, 2021) (finding the Terms were reasonably conspicuous when "the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately above or below a button that must be clicked to affirmatively acknowledge the terms, place an order, or register for an account").

***Second***, as to the context of the transaction, providing an email and password for future login, *see* Karlsson Decl. ¶ 10, Ex. A, and creating an account is a clear indication of an "ongoing relationship," which S.A. and A.S. should have naturally understood would be governed by a set of terms. *Sarhadi*, 2025 WL 1350033, at *6; *see, e.g.*, *Oberstein*, 60 F.4th at 517 (engaging in "a full registration process" reflected "the contemplation of some sort of continuing relationship that would have put users on notice for a link to the terms of that continuing relationship" (internal quotation marks omitted)); *Ghazizadeh*, 737 F. Supp. 3d at 925 ("[A] user engaging in a full registration process, as opposed to a one-time purchase, is more likely to expect a continuing relationship that would put her on notice for a link to the terms of that continuing relationship."); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471 (2021) (discussing situations where a "consumer [is] signing up for an ongoing account and, thus, it is reasonable to expect that the

typical consumer in that type of transaction contemplates entering into a continuing, forward-looking relationship").

**2. S.A. and A.S. unambiguously manifested their assent to the Terms.**

S.A. and A.S. also "took some action that unambiguously manifested [their] assent" to the Natural Cycles Terms. *Oberstein*, 60 F.4th at 517. After entering their respective email addresses and typing in a password, S.A. and A.S. were presented with a "Before you start" screen asking them to "read and accept" the hyperlinked Terms and click the purple "Accept" button. Karlsson Decl. ¶¶ 11–12, Ex. B. "[T]hat is all that is required." *Oberstein*, 60 F.4th at 517 (terms were valid and binding where notices at issue explicitly alert the user that by creating an account and proceeding to the next page, the user "agrees to our Terms of Use"). Through this affirmative click, S.A. and A.S. agreed to those Terms.

**B. The parties delegated to the arbitrator the question of whether S.A. and A.S.'s claims are arbitrable.**

The question of whether the present dispute is arbitrable is a question that must be decided by the arbitrator. The FAA requires courts to compel arbitration "in accordance with the terms of the [parties'] agreement." 9 U.S.C. § 4. When parties "clearly and unmistakably" demonstrate their intent to have the arbitrator decide arbitrability, those issues must be submitted to the arbitrator. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010) (citation omitted); *see also Henry Schein, Inc.*, 586 U.S. at 69 (holding that courts "may not decide" arbitrable issues that have been delegated and must compel arbitration). This delegation is clear in two respects.

***First***, the October 2025 Terms—to which both S.A. and A.S. agreed, *see supra* section V.A—provide that "the arbitrator will have exclusive authority to make all procedural and substantive decisions regarding any Claim … including the power to determine the question of arbitrability." Karlsson Decl., Ex. D, ¶ 17.4. This provision dictates that the arbitrator will decide the question of whether the present dispute falls within the scope of the arbitration agreement and whether the arbitration agreement is unconscionable. *See, e.g.*, *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70–72 (holding that unconscionability challenge to arbitration agreement must be decided by the arbitrator due to clause that delegated gateway issues to the arbitrator); *Crook v. Wyndham*

*Vacation Ownership, Inc.*, No. 13-CV-03669-WHO, 2015 WL 4452111, at *2 (N.D. Cal. July 20, 2015) (recognizing that "gateway matters" include whether a given "arbitration clause applies to a [particular] controversy").

***Second***, both the July 2022 Terms and the October 2025 Terms call for use of the AAA arbitration rules, which themselves also delegate questions of arbitrability to the arbitrator. *See* Karlsson Decl., Ex. C, ¶ 14.1.1, Ex. D, ¶ 17.4; Carter Decl., Ex. A, ¶ R-7(a), Ex. B, ¶ R-7(a). Numerous courts, including the Ninth Circuit, have held that incorporation of the AAA arbitration rules constitutes a valid delegation to the arbitrator of any questions of arbitrability. *See, e.g.*, *Brennan*, 796 F.3d at 1130 ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." (citation omitted)); *G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020) ("[T]he teenagers clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporates AAA rules."); *see also Greenberg v. Amazon.com, Inc.*, No. 20-CV-02782-JSW, 2021 WL 7448530, at *7 (N.D. Cal. May 7, 2021) (same result due to incorporation of AAA rules).

### C. Even if the parties had not delegated the question of arbitrability, S.A. and A.S.'s claims are arbitrable.

S.A. and A.S.'s claims fall within the scope of the arbitration agreement, which is not unconscionable, so even if the Court were to conclude that the parties did not delegate the issue of arbitrability, S.A. and A.S. would still be required to arbitrate their claims.

#### 1. The claims fall within the scope of the arbitration agreement.

The July 2022 Terms required S.A. and A.S. to arbitrate "[a]ny controversy or claim between [them] and [Natural Cycles] arising out of or relating in any way to [their] access or use of [Natural Cycles] Services, Products, Sites or Webshop." Karlsson Decl., Ex C, ¶ 14.1. The October 2025 Terms similarly require S.A. and A.S. to arbitrate "any dispute, claim, or controversy," excluding intellectual property and small claims disputes, "whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory…that arises from or relates to these Terms, the Products or the Services, including … all privacy or data security

claims[.]" *Id.*, Ex. D, ¶¶ 17.1, 17.4. S.A. and A.S.'s claims, which sound in privacy, arise from their use of the Natural Cycles website and mobile application—which are "Products" or "Services." *See supra* notes 2–4. Thus, under either version of the Natural Cycles Terms, the arbitration agreement covers S.A. and A.S.'s claims.

**2. Natural Cycles' arbitration agreement is not unconscionable.**

To avoid arbitration on unconscionability grounds, S.A. and A.S. must demonstrate both "procedural and substantive unconscionability." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1013 (9th Cir. 2023); *see also Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) ("Both procedural and substantive unconscionability must be present in order for a clause to be unconscionable."). If the Court finds no procedural unconscionability, it "need not examine . . . substantive unconscionability." *Siert v. Spiffy Franchising, LLC*, 758 F. Supp. 3d 1142, 1152 (N.D. Cal. 2024). S.A. and A.S. cannot show either. *See, e.g.*, *Bielski*, 87 F.4th at 1013 ("[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." (citation omitted)).

**i. The arbitration agreement is not procedurally unconscionable.**

Procedural unconscionability focuses on "two factors: oppression and surprise." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1139 (N.D. Cal. 2010) (internal quotation marks and citation omitted). Natural Cycles subjected S.A. or A.S. to neither.

Establishing oppression would require S.A. and A.S. to allege facts showing "an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice," *id.* (citation omitted), which they have not done. Often, "[t]he analysis for procedural unconscionability begins with an inquiry into whether the contract is one of adhesion." *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 952 (N.D. Cal. 2023) (internal quotations and citations omitted). The Ninth Circuit has "consistently found that 'an arbitration agreement is not adhesive if there is an opportunity to opt out of it.'" *Baghdasarian v. Macy's Inc.*, No. 24-3438, 2025 WL 999082, at *2 (9th Cir. Apr. 3, 2025) (citing *Mohamed*, 848 F.3d at 1211). Here, S.A. and A.S. had an opportunity to opt out of arbitration "within 30 days" of accepting the October 2025 Terms. Karlsson Decl., Ex. D, ¶ 17.10; *see also Lag Shot LLC v. Facebook, Inc.*, 545 F.

Supp. 3d 770, 779 (N.D. Cal. 2021) (finding arbitration clause "neither adhesive nor oppressive" where users could opt-out within 30-days). Neither S.A. nor A.S. opted out of arbitration. Karlsson Decl., ¶ 24. Thus, there is no contract of adhesion.

Moreover, "any claim of 'oppression' may be defeated if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods or services free of the terms claimed to be unconscionable." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005) (citation omitted). Here, S.A. and A.S. have not alleged facts showing that they did not have a "reasonably available alternative" to Natural Cycles. *See Wood v. Verve Grp. Eur. GMBH*, No. 5:24-cv-04909, Dkt. No. 44 (N.D. Cal. Dec. 9, 2025) (no oppression where plaintiff had not "alleged facts showing he did not have a 'reasonably available alternative' to the … app"). Indeed, Plaintiffs recognize that other businesses offer similar services and do not suggest that they lacked access to such alternatives. *See* Compl. ¶¶ 158–59. As such, S.A. and A.S. have not shown oppression.

S.A. and A.S. similarly have not alleged surprise. There is no reason to believe that S.A. and A.S. could not or did not access Natural Cycles' Terms at the time they created their accounts. *See Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *12 (N.D. Cal. Mar. 14, 2017) (no surprise where plaintiffs did not allege they did not receive notice of the terms or that they could not or did not access the terms prior to their purchase). There can also be no arguments that the arbitration agreement was somehow "hidden" or otherwise buried in legalese. *Turbin v. Thumbtack, Inc.*, No. 25-cv-03388-EMC, 2025 WL 3013972, at *5 (N.D. Cal. Oct. 28, 2025). To the contrary, in both sets of terms, the arbitration agreements at issue were clearly disclosed in large black font on a white background with a black border. Karlsson Decl., Ex. C ¶ 14, Ex. D ¶ 17. Both also included clear and conspicuous subheadings notifying users of what each section covered. *Id.*

**ii. The arbitration agreement is not substantively unconscionable.**

Because there is no procedural unconscionability, the Court need not consider whether there is substantive unconscionability. *See, e.g.*, *Siert*, 758 F. Supp. 3d at 1152; *Turbin*, 2025 WL

3013972, at *5. Should the Court nonetheless wish to analyze whether substantive unconscionability is present, it will find none here.

"Substantive unconscionability examines the fairness of a contract's terms." *Costa v. Apple, Inc.*, No. 23-CV-01353-WHO, 2024 WL 6905721, at *6 (N.D. Cal. Jan. 19, 2024) (citing *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 129 (2019)). "The substantive unconscionability doctrine is concerned with terms that are 'unreasonably favorable to the more powerful party,' not just 'a simple old-fashioned bad bargain.'" *Id.* (quoting *OTO*, 8 Cal. 5th at 130).

The terms here, however, do not shock the conscience, nor could they be deemed to be oppressive—instead, it is a mutual agreement imposing the same obligations on both S.A. and A.S. *and* Natural Cycles. Specifically, the July 2022 Terms and October 2025 Terms bind both parties to arbitration and contain a mutual class action waiver. Karlsson Decl., Ex. C ¶ 14, Ex. D 17. Courts routinely enforce such arbitration clauses. *See, e.g.*, *Keebaugh*, 100 F.4th at 1023. There is no substantive unconscionability here, either.

**D. The Court should stay this case.**

The Court should not only compel S.A. and A.S.'s individual claims to arbitration but should also stay this case, for all parties, pending the completion of the arbitration. Under Section 3 of the FAA, a stay is mandatory for the parties to the arbitration agreement. *See* 9 U.S.C § 3 (court "***shall*** on application of one of the parties stay the trial of the action until [the] arbitration" (emphasis added)); *Smith*, 601 U.S. 472, 473–74 (2024) (unanimously holding the same). Because S.A. and A.S. entered into binding arbitration agreements with Natural Cycles, the Court should compel arbitration of their individual claims and stay the proceedings as to those individual claims. *Id.*

In the interest of judicial economy and equitable outcomes, the Court should also grant a discretionary stay for S.S. and M.F.'s claims. "In deciding whether to stay non-arbitrable claims, a court considers economy and efficiency, the similarity of the issues of law and fact to those that will be considered during arbitration, and the potential for inconsistent findings absent a stay." *Wolf v. Langemeier*, No. 2:09-CV-03086-GEB-EFB, 2010 WL 3341823, at *8 (E.D. Cal. Aug. 24, 2010) (citation omitted). This is particularly true in cases where all parties are not signatories

to an arbitration agreement. Under such circumstances, "a stay of all issues, and as to all parties, is warranted when questions of fact common to all would be involved in both the litigation and the arbitration." *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114 (C.D. Cal. 2002) (citing *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)).

Here, arbitration of S.A. and A.S.'s claims will involve the same factual and legal disputes presented by S.S. and M.F.'s claims. *See* Compl. ¶ 199 (conceding that common questions of law and fact exist as to the "Plaintiffs and all Class Members"), *id.* ¶ 203 (similar). It would waste judicial resources to simultaneously litigate these issues in this Court and arbitration. Moreover, allowing S.S. and M.F.'s claims against Natural Cycles to advance in this Court while arbitration proceeds poses the very real risk of inconsistent outcomes. Depending on how the litigation develops, dueling proceedings seeking Plaintiffs requested relief could result in inconsistent or even mutually exclusive judgments as to Natural Cycles' conduct.

Courts in this circuit regularly grant stays under similar circumstances. *See, e.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018) (denying the motion to compel arbitration for several plaintiffs but staying entire action pending the completion of arbitration); *Wolf*, 2010 WL 3341823, at *8 (staying all claims by all plaintiffs even though only five of thirteen agreed to arbitrate, because remaining plaintiffs "allege the same claims as the contracting Plaintiffs, against the same Defendants"); *Bischoff*, 180 F. Supp. 2d at 1114 (staying consumer class action for defendants with non-arbitrable claims, pending the result of arbitration between plaintiffs and one defendant, to avoid duplicative litigation). Accordingly, the Court should stay the entire case pending the outcome of arbitration of S.A. and A.S.'s claims.

**E. S.A. and A.S.'s class claims should be dismissed as waived.**

Because courts must enforce arbitration agreements "in accordance with the[ir] terms," 9 U.S.C. § 4, in addition to staying their individual claims, and to the extent they survive Natural Cycles' contemporaneously filed motion to dismiss pursuant to Rule 12(b)(6), the Court should dismiss S.A. and A.S.'s class claims. In both the July 2022 Terms and the October 2025 Terms,

S.A. and A.S. agreed to a valid and binding class action waiver, thereby waiving their ability to bring class claims on behalf of others. This justifies dismissing their class claims outright (instead of staying those claims, as with S.A. and A.S.'s individual claims). *See, e.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d at 1304 (dismissing class claims for several plaintiffs who had agreed to binding arbitration provision and waived right to represent a class (citing *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233–39 (2013))).

## VI. CONCLUSION

Because S.A. and A.S. each agreed to arbitrate this dispute, Natural Cycles respectfully requests that the Court compel arbitration of S.A. and A.S.'s individual claims, stay this action pending the outcome of arbitration, and dismiss S.A. and A.S.'s class claims.

Dated: March 30, 2026

**PERKINS COIE LLP**

By: */s/ Nicola C. Menaldo*
Nicola C. Menaldo, *pro hac vice*
Anna M. Thompson, *pro hac vice*
Timothy M. Carter, Bar No. 335212

Attorneys for Defendants NATURALCYCLES USA CORPORATION AND NATURALCYCLES NORDIC AB