**PERKINS COIE LLP**
Nicola C. Menaldo, *pro hac vice*
NMenaldo@perkinscoie.com
Anna Mouw Thompson, *pro hac vice*
AnnaThompson@perkinscoie.com
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

Timothy M. Carter, Bar No. 335212
TCarter@perkinscoie.com
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

Attorneys for Defendants NATURALCYCLES USA CORPORATION AND NATURALCYCLES NORDIC AB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

S.A., S.S., A.S., and M.F., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NATURALCYCLES USA CORPORATION AND NATURALCYCLES NORDIC AB,

Defendants.

Case No. 3:25-cv-10421-WHO

**DEFENDANTS NATURALCYCLES USA CORPORATION AND NATURALCYCLES NORDIC AB'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Judge: Hon. William H. Orrick
Date: June 17, 2026
Time: 2:00pm
Location: Courtroom 2, 17th Floor

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS ........ 1
MEMORANDUM OF POINTS AND AUTHORITIES ........ 2
I. INTRODUCTION ........ 2
II. STATEMENT OF ISSUES TO BE DECIDED ........ 3
III. BACKGROUND ........ 4
A. Natural Cycles ........ 4
B. The California Consumer Privacy Act ........ 5
C. Plaintiffs' Experiences and Allegations ........ 6
D. Plaintiffs' Claims ........ 7
IV. ARGUMENT ........ 8
A. S.S. fails to state any viable cause of action against Natural Cycles. ........ 8
1. S.S. cannot bring a CMIA claim because she is not a "patient." ........ 8
2. S.S.'s remaining claims are time barred. ........ 9
3. S.S. does not plead facts sufficient to establish tolling. ........ 10
B. Plaintiffs' CIPA claims should be dismissed. ........ 12
1. CIPA's one-year statute of limitations bars the remaining Plaintiffs' claims. ........ 13
2. Plaintiffs fail to state claims under CIPA Section 631(a)'s aiding-and-abetting clause because they do not plausibly allege a predicate violation. ........ 13
a) Clause 1: No "telegraph or telephone" equipment. ........ 14
b) Clause 2: No "in transit" reading of content. ........ 14
c) Clause 3: No underlying violation of Clause 1 or 2. ........ 16
3. Plaintiffs fail to state a claim under Section 632 because they do not plausibly allege an "electronic amplifying or recording device." ........ 16
4. Plaintiffs' Section 638.51 claim fails as inconsistent with the text, history, and purpose of the pen register provision. ........ 17

## TABLE OF CONTENTS


Page

C. Plaintiffs' intrusion upon seclusion claim fails because they voluntarily shared their information with Natural Cycles. .................................................. 20

D. Plaintiffs' California Constitutional privacy claim (Article I, § 1) fails because Plaintiffs seek only damages. ................................................ 21

E. Plaintiffs cannot recover for unjust enrichment. ................................................ 22

V. CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
603 F. Supp. 3d 857 (N.D. Cal. 2022) .......... 12

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 (N.D. Cal. 2023) .......... 10

*Allen v. County of Sonoma*,
2017 WL 3593340 (N.D. Cal. Aug. 18, 2017) .......... 21

*Anderson v. Brouwer*,
99 Cal. App. 3d 176 (1979) .......... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8

*Bates v. Arata*,
2008 WL 820578 (N.D. Cal. Mar. 26, 2008), *order clarified sub nom. Bates v. S.F. Sheriff's Dep't*, 2008 WL 961153 (N.D. Cal. Apr. 7, 2008) .......... 21

*Beltran v. Drs. Med. Ctr. of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) .......... 9

*Bernson v. Browning-Ferris Indus.*,
7 Cal. 4th 926 (1994) .......... 12

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 10, 22

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 10

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024) .......... 18

*Clausing v. San Francisco Unified School District*,
221 Cal. App. 3d 1224 (1990) .......... 22

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 13

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 22

## TABLE OF AUTHORITIES


**Page(s)**

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2983143 (N.D. Cal. Oct. 17, 2025) ........ 8, 9

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........ 2, 15,16, 19

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 15, 17

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........ 17

*Doe v. Regents of Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ........ 21

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
2015 WL 13273308 (C.D. Cal. July 29, 2015) ........ 22

*Fodor v. AOL Time Warner, Inc.*,
217 F. App'x 622 (9th Cir. 2007) ........ 11

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........ 10

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........ 17

*Griffith v. TikTok, Inc.*,
2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ........ 22

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ........ 17

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) ........ 16, 20

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........ 20

*Heiting v. HP, Inc.*,
2025 WL 2993673 (Cal. Super. Ct. Aug. 1, 2025) ........ 19

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ........ 13

## TABLE OF AUTHORITIES

**Page(s)**

*Hughes v. Dave & Buster's Ent., Inc.*,
2025 WL 2996811 (Cal. Super. Ct. July 16, 2025) .......... 18

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024), *reconsideration denied*, 2024 WL 4592367 (N.D. Cal. Oct. 28, 2024) .......... 22

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 16

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 15, 19

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 10, 11

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) .......... 12

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024) .......... 21

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .......... 21

*Kyko Glob. Inc. v. Bhongir*,
2021 WL 4958989 (9th Cir. 2021) .......... 12

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 17

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) .......... 15

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 14

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) .......... 18

*Mandosia v. Bank of Am., NA*,
794 F. App'x 623 (9th Cir. 2020) .......... 11

## TABLE OF AUTHORITIES

**Page(s)**

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ..... 14

*Montalti v. Catanzariti*,
191 Cal. App. 3d 96 (1987) ..... 10

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ..... 17

*Nacarino v. Chobani, LLC*,
2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ..... 23

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ..... 21

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) ..... 17

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025) ..... 18, 20

*Rodriguez v. Plivo Inc.*,
2024 WL 5184413 (Cal. Super. Ct. Oct. 2, 2024) ..... 20

*Rodriguez v. Sparc Grp., LLC*,
2025 WL 2993671 (Cal. Super. Ct. July 9, 2025) ..... 20

*Rose v. Variety Media LLC*,
2025 WL 2794920 (Cal. Super. Ct. L.A. Cnty. Sept. 24, 2025) ..... 20

*Rusow v. Skinspirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ..... 12

*Rusow v. Skinspirit Essential LLC*,
2026 WL 453476 (N.D. Cal. Feb. 18, 2026) ..... 11, 13

*Rustico v. Intuitive Surgical, Inc.*,
424 F. Supp. 3d 720 (N.D. Cal. 2019), *aff'd*, 993 F.3d 1085 (9th Cir. 2021) ..... 11

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ..... passim

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ..... 18

## TABLE OF AUTHORITIES

**Page(s)**


*Sanchez v. L.A. Dep't of Transp.*,
39 F.4th 548 (9th Cir. 2022)........................................ 9

*Sass v. Cohen*,
10 Cal. 5th 861 (2020)........................................ 18

*Schallert v. Orkin LLC*,
2025 WL 4332757 (Cal. Super. Ct. Dec. 15, 2025)........................................ 18

*Scharon v. Paramount Glob.*,
2025 WL 2996812 (Cal. Super. Ct. Oct. 3, 2025)........................................ 20

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)........................................ 13

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)........................................ 22

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)........................................ 8

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024), *reconsideration denied*, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024), *appeal dismissed*, 2025 WL 1894802 (11th Cir. May 9, 2025)........................................ 21

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978)........................................ 14

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)........................................ 15

*United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*,
720 F.3d 1174 (9th Cir. 2013)........................................ 12

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023)........................................ 13

*Vance v. Google LLC*,
2024 WL 5011611 (N.D. Cal. Dec. 5, 2024)........................................ 23

*Variety Media, LLC v. Super. Ct.*,
No. B350578 (Cal. Ct. App. Jan. 8, 2026)........................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 14

*Yumul v. SmartBalance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) .......... 11

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 9

**STATUTES**

Cal. Civ. Code § 56.05 .......... 8

Cal. Civ. Code § 56.06 .......... 8

Cal. Civ. Code § 56.10 .......... 7, 8

Cal. Civ. Code § 56.101 .......... 7, 8

Cal. Civ. Code § 1798.100 .......... 5

Cal. Civ. Code § 1798.120 .......... 5

Cal. Civ. Code § 1798.140 .......... 5, 6

Cal. Code Civ. Proc. § 335.1 .......... 9

Cal. Penal Code § 631 .......... 3, 7, 12, 13, 14, 15, 16

Cal. Penal Code § 632 .......... passim

Cal. Penal Code § 637.7 .......... 17

Cal. Penal Code § 638.50 .......... 18

Cal. Penal Code § 638.51 .......... passim

Cal. Penal Code § 638.52 .......... 18, 19

Cal. Penal Code § 638.53 .......... 18

**RULES**

Fed. R. Civ. P. 12 .......... 2, 8

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, June 17, 2026, at 2:00 p.m., or as soon thereafter as this motion may be heard in the above-titled Court, located at 450 Golden Gate Avenue, 17th Floor, Courtroom 2, San Francisco, CA 94102, Defendants NaturalCycles USA Corporation and NaturalCycles Nordic AB (collectively "Natural Cycles") will and hereby do move this Court for an order dismissing Plaintiffs' Class Action Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed declaration of Anna Mouw Thompson and the exhibit attached thereto, all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing on this Motion or otherwise.

**STATEMENT OF RELIEF SOUGHT**

Natural Cycles seeks an order dismissing Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: March 30, 2026

**PERKINS COIE LLP**

By: */s/ Nicola C. Menaldo*
Nicola C. Menaldo, *pro hac vice*
Anna Mouw Thompson, *pro hac vice*
Timothy M. Carter, Bar No. 335212

Attorneys for Defendants NATURALCYCLES USA CORPORATION AND NATURALCYCLES NORDIC AB

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Natural Cycles is not your regular consumer health app. As a class II FDA-cleared medical device intended to be used by women above 18 years to monitor fertility, it is subject to rigorous clinical validation, regulatory oversight, and ongoing compliance obligations in the United States, Europe, and additional markets. Unlike other "free" apps that monetize user data, Natural Cycles operates on a paid subscription model. Plaintiffs have nevertheless accused Natural Cycles of overstating its privacy practices and enabling third parties to collect certain data for advertising and marketing purposes.[1] They bring claims under a variety of laws, many of which have nothing to do with Natural Cycles, while wholly disregarding the comprehensive regulatory framework and compliance obligations governing Natural Cycles' operations. Natural Cycles moves to dismiss for failure to state a claim under Rule 12(b)(6).

First, S.S. fails to state a single viable claim. Unlike the other three Plaintiffs, S.S. never became a Natural Cycles account holder. She visited the website and completed an onboarding questionnaire in July 2023 but chose not to subscribe. That means she is not a "patient" under the California Confidentiality of Medical Information Act ("CMIA"). And her remaining claims—for invasion of privacy, violations of the California Invasion of Privacy Act ("CIPA"), and unjust enrichment—are time barred. S.S. should be dismissed from this lawsuit outright.

Second, all Plaintiffs' CIPA claims fail on the merits, and the statute of limitations bars them regardless. The core problem for Plaintiffs is that CIPA's "statutory language was drafted with very different technology in mind." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025). Plaintiffs seek to shoehorn modern internet analytics into the wiretapping and pen register provisions of a decades-old criminal statute. But the proper vehicle for regulating online data collection and targeted advertising is the California Consumer Privacy Act ("CCPA"), which establishes a comprehensive notice and opt-out framework for the collection of personal information. Natural Cycles designed its product to comply with the

---

[1] Plaintiffs' allegations must be treated as true at this stage of the litigation, but discovery will show that the complaint grossly mischaracterizes Natural Cycles' technology and practices.

CCPA, a law that Plaintiffs notably do not allege was violated.

Third, Plaintiffs' remaining claims are similarly deficient. Their intrusion upon seclusion claim fails because they voluntarily provided information to Natural Cycles, and one cannot "intrude" upon communications to which one is a party. Their California Constitutional privacy claim seeks only damages, a remedy unavailable under Article I, Section 1. And their unjust enrichment claim fails to establish that legal remedies are inadequate.

For these reasons, as set forth more fully below, the Court should dismiss Plaintiffs' Complaint in its entirety.[2]

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiff S.S. fails to state a CMIA claim because she is not a "patient" of Natural Cycles.
2. Whether Plaintiff S.S.'s claims are time-barred under the relevant statute of limitations.
3. Whether Plaintiffs fail to state a claim under California Penal Code § 631, 632, and 638.51 because they are time-barred under the statute of limitations.
4. Whether Plaintiffs fail to state a claim under California Penal Code § 631 because they do not allege use of telephone equipment or reading of content while "in transit."
5. Whether Plaintiffs fail to state a claim under California Penal Code § 632 because they do not plausibly allege an "electronic amplifying or recording device."
6. Whether Plaintiffs fail to state a claim under California Penal Code § 638.51 because their theory of liability is inconsistent with the text, history, and purpose of the pen register provision.
7. Whether Plaintiffs fail to state a claim for intrusion upon seclusion because they voluntarily shared their information with Natural Cycles.
8. Whether Plaintiffs fail to state a California Constitutional privacy claim under Article I, § 1 because they seek only damages.

[2] The Court need not decide this motion if it grants Natural Cycles' contemporaneously filed motion to compel arbitration as to S.A. and A.S. and to stay this case pending arbitration.

9. Whether Plaintiffs fail to state a claim for unjust enrichment because they have not pleaded facts sufficient to show that they lack an adequate remedy at law.

## III. BACKGROUND

### A. Natural Cycles

Natural Cycles operates a software application intended to be used by women above 18 years old to monitor fertility for preventing a pregnancy (contraception) or planning a pregnancy (conception), Compl. ¶¶ 2, 28 n.5 (incorporating by reference https://www.naturalcycles.com). Account holders input tracking information such as their dates of menstruation, daily basal temperature, sexual activity, and pregnancy status and receive fertility outputs and other insights into their health. *Id.* ¶ 29. While many businesses seemingly offer similar services, *see id.* ¶¶ 158–59, Natural Cycles stands apart in two key ways.

First, Natural Cycles offers the first and only application of its kind to have been cleared by the FDA as hormone-free birth control, which is up to 98% effective when used correctly. *Id.* ¶ 32 n.10 (incorporating by reference https://www.naturalcycles.com/the-science). Before they can use the Natural Cycles application, users must complete an onboarding questionnaire that asks for standard user information (like name, contact information, and age), about a prospective account holder's goals, and for scientifically-relevant information such as past and current birth control methods, medical conditions, and so forth. *Id.* ¶¶ 34, 36, 38. Once onboarded, account holders may enter information about menstruation, basal body temperature, mood, and related indicators so that Natural Cycles can offer accurate, personalized guidance. *Id.* ¶¶ 40–42.

Second, Natural Cycles offers a privacy-protective, subscription-based model. *See id.* ¶ 2. It thus stands as an "alternative to 'free' apps that monetize personal data." *Id.* ¶ 158.

In addition to its application, Natural Cycles also operates a website: www.naturalcycles.com. *Id.* ¶ 28 n.5. This website provides publicly available information to account holders, prospective users, and anyone else browsing the website. There is a "cookie banner" on the Natural Cycles website, which allows users to either "allow all cookies" or, alternatively, "manage" the cookies that "analyze traffic for the personalization of content and

ads." *Id.* ¶ 144.




Like many businesses, Natural Cycles advertises its services to prospective users, and it collects, uses, and discloses certain data for such purposes through third-party technologies (like cookies). As explained in its Privacy Policy, this includes things like IP addresses, purchase history, and website interactions. *See* Declaration of Anna Mouw Thompson in Support of Natural Cycles' Motion to Dismiss ("Thompson Decl."), Ex. A, NC Privacy Policy § 1 (cited and incorporated by reference at Compl. ¶¶ 22, 35, 153). Consistent with its privacy-protective approach, however, Natural Cycles discloses in its Privacy Policy that it does not "Sell or Share any fertility status data, period data, sexual activity data, medical condition data, or logged symptom or pregnancy data." *Id.*, US Privacy Notice Addendum § 1.

**B. The California Consumer Privacy Act**

The disclosures in Natural Cycles' Privacy Policy, as well as its broader privacy practices, are designed to comply with the California Consumer Privacy Act (CCPA). *See* Thompson Decl., Ex. A, NC Privacy Policy § 12 ("California Residents"), US Privacy Notice Addendum § 3 ("Additional information for California residents"). In broad strokes, the CCPA establishes a notice regime for the collection of personal information, and gives consumers the right to opt *out* of information collection, request access to the personal information that a business has about them, or request deletion of such information. Cal. Civ. Code §§

1798.100(a)(1)–(2), 1798.120(a)(1), 1798.140(ah)(1), 1798.140(k). The CCPA defines the term "personal information" to broadly include "[IP] address," "browsing history, search history," and "information regarding a consumer's interaction with an Internet Web site, application, or advertisement." *Id.* § 1798.140(v)(1).

### C. Plaintiffs' Experiences and Allegations

Three of the named Plaintiffs in this action, S.A., A.S., and M.F., created Natural Cycles accounts and subscribed to the Natural Cycles application. S.A. subscribed on September 28, 2023, A.S. subscribed on May 4, 2023, and M.F. subscribed on January 15, 2024. Compl. ¶¶164, 178, 186. The fourth named Plaintiff, S.S., did not create an account or subscribe to the Natural Cycles application. She took the onboarding questionnaire on the Natural Cycles website in July 2023, but chose not to use the application. *Id.* ¶ 171.

Three of the Plaintiffs allege that they "believe[]" they followed their regular practice of "disabling or rejecting all cookies other than those labeled as 'necessary" when [they] used the Natural Cycles website and mobile." Compl. ¶¶ 174–75 (S.S.), 182–83 (A.S.), 190–91 (M.F.). The fourth Plaintiff, S.A., does not allege to have such a practice or to have disabled cookies as to Natural Cycles. *Id.* ¶¶ 164–69. Each of the four named Plaintiffs alleges that she received "specific targeted advertisements for Natural Cycles on social media platforms" at or around the time she first interacted with the Natural Cycles website and/or mobile application—anywhere from two and a half to three years before the Complaint was filed on December 4, 2025. *See id.* ¶¶ 168 (S.A.), 176 (S.S.), 184 (A.S.), 192 (M.F.).

The following table summarizes the above allegations for convenience:

| **Plaintiff** | **Account holder?** | **Opted out of Cookies?** | **Alleges Receipt of Targeted Ads?** | **First Visit or Use and Date of Ad-Receipt** |
|---|---|---|---|---|
| S.A. | Yes | No | Yes | September 28, 2023 |
| S.S. | No | Yes | Yes | July 2023 |
| A.S. | Yes | Yes | Yes | May 4, 2023 |
| M.F. | Yes | Yes | Yes | January 15, 2024 |

Plaintiffs' allegations against Natural Cycles center on its purported use of third-party technologies offered by Mixpanel, AddShoppers, Google, and TikTok. *Id.* ¶ 3. Many of these allegations are inaccurate and grossly mischaracterize Natural Cycles' technology and practices, but must be treated with the presumption of truth at this stage in this litigation.

Plaintiffs allege that Mixpanel, a service that many companies use to store and process their own user data, receives user-entered information about their health and fertility—including answers submitted in response to the onboarding questionnaire and the information that account holders track in the Natural Cycles application. *Id.* ¶¶ 54–60. Despite the fact that Mixpanel is not an advertising technology company, Plaintiffs allege "on information and belief" that "Natural Cycles used Mixpanel" capabilities "to market, retarget, and advertise to Natural Cycles users and prospective customers, including Plaintiffs and Class Members." *Id.* ¶ 70. **Plaintiffs do not allege that any other third parties other than Mixpanel receive user-entered information about health and fertility.** But they allege that AddShoppers, Google, and TikTok (and Mixpanel) receive other information, such as referrer and full page URLs, unique user and device identifiers, IP-based geolocation data, information about pageviews, and timestamps. *Id.* ¶¶ 75, 94, 115, 265. Plaintiffs further allege that these third parties might be able to draw inferences about their health information and status based on such information, with a particular focus on inferences drawn from URLs, *see id.* ¶¶ 107, 118, 129, 131–39.

Each Plaintiff alleges that she learned of the challenged conduct from counsel shortly before filing suit, and that she "lack[ed] the technical expertise" to detect tracking or to understand the full nature of Natural Cycles' data-sharing practices. *Id.* ¶¶ 194–99.

**D. Plaintiffs' Claims**

Plaintiffs filed their Complaint on December 4, 2025, asserting claims under several California privacy statutes and doctrines. Specifically, Plaintiffs bring claims under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 632, and 638.51; the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56.10 and 56.101; intrusion upon seclusion under California common law; invasion of privacy under

Article I, Section 1 of the California Constitution; and unjust enrichment. Compl. ¶¶ 207–309.

## IV. ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). At the motion to dismiss stage, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party . . . . [but the] court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). A plaintiff must therefore plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### A. S.S. fails to state any viable cause of action against Natural Cycles.

#### 1. S.S. cannot bring a CMIA claim because she is not a "patient."

CMIA generally prohibits healthcare providers and related entities from disclosing a patient's medical information without authorization. *See* Cal. Civ. Code §§ 56.10(a), (d), 56.101(a); Compl. ¶¶ 218–19, 223, 226 (invoking same subsections); *see also Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2983143, at *1 (N.D. Cal. Oct. 17, 2025) (Sections 56.10 and 56.101 both require "that the information at issue belong to a 'patient'"). But S.S. is not a patient of Natural Cycles, so her CMIA claim must be dismissed.

CMIA defines "Patient" as "a natural person, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains." Cal. Civ. Code § 56.05(m). A business acts as a "provider of health care" when it offers "software . . . including a mobile application . . . designed to maintain medical information," or when it "offers a reproductive or sexual health digital service" to allow for information management. Cal. Civ. Code § 56.06(b) and (e). However, courts have regularly held that merely viewing a website related to health care or even completing preliminary intake forms online is

insufficient to establish "patient" status. Indeed, such individuals have not *received* any health care services offered by the website operator. *See, e.g.*, *Eating Recovery Ctr.*, 2025 WL 2983143, at *1 (even if plaintiff completed an online "diagnostic quiz and self-assessment form . . . that would not make her a patient within the meaning of [CMIA] because the operator of the website is not performing any type of professional service at that point"); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 901 (S.D. Cal. 2025) (visiting HealthWarehouse.com to search for prescriptions insufficient to establish patient status); *Beltran v. Drs. Med. Ctr. of Modesto*, 2025 WL 1635467, at *9 (E.D. Cal. June 9, 2025) ("Plaintiffs' use of the Website alone does not support the inference that Plaintiffs were Defendants' patients because the Website is not exclusively available to Defendants' patients.").

S.S. allegedly browsed Natural Cycles' website and completed an onboarding questionnaire. Compl. ¶ 171. But she decided not to create a Natural Cycles account or use the application to manage or maintain her fertility information—she only investigated such services. *Id.* ¶ 171. On these facts, S.S. is not a "patient" of Natural Cycles as a matter of law because Natural Cycles was "not performing any type of professional service at that point." *Eating Recovery Ctr.*, 2025 WL 2983143, at *1. Her CMIA claim thus fails and should be dismissed with prejudice because it cannot be cured. *See, e.g.*, *Sanchez v. L.A. Dep't of Transp.*, 39 F.4th 548, 562 (9th Cir. 2022) (affirming dismissal with prejudice where "no additional facts could possibly have cured the deficiency" of the plaintiff's claims).

**2. S.S.'s remaining claims are time barred.**

S.S.'s remaining claims are all time barred. She allegedly used the Natural Cycles website and took the onboarding questionnaire only once—in July 2023. Around the same time, she allegedly received "specific targeted advertisements for Natural Cycles on social media platforms." Compl. ¶ 176. July 2023 was two and a half years ago, well outside the statute of limitations period for her remaining claims for invasion of privacy (counts 2 and 3), CIPA violations (counts 4, 5, and 6), and unjust enrichment (count 7). Those claims should therefore be dismissed as time barred.

The longest possible statute of limitations for S.S.'s common-law and constitutional invasion of privacy claims is two years. *See* Cal. Code Civ. Proc. § 335.1; *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) ("The statute of limitations for Plaintiffs' intrusion upon seclusion and invasion of privacy claims is two years."). A two-year statute of limitations is also the best-case scenario for her unjust enrichment claim, because the limitations period for such a claim is based on the nature of the underlying wrong—here, a purported privacy invasion. *See Al-Ahmed v. Twitter, Inc.*, 648 F. Supp. 3d 1140, 1155 n.1 (N.D. Cal. 2023). Finally, S.S.'s CIPA claims are subject to a one-year statute of limitations. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) ("CIPA has a one-year statute of limitations."); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) ("Under the CIPA, the applicable statute of limitations is one year.").

Under California law, a cause of action generally accrues "when [it] is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005); *see also Montalti v. Catanzariti*, 191 Cal. App. 3d 96, 99 (1987) ("The general rule is that a cause of action accrues when the wrongful act is done and not at the time of discovery; the plaintiff's ignorance does not toll the running of the period.").

Here, S.S.'s claims accrued in July 2023 when she took the Natural Cycles onboarding questionnaire and allegedly received targeted advertisements for Natural Cycles on Instagram and TikTok. Compl. ¶¶ 171, 176. S.S.'s claims for invasion of privacy, CIPA violations, and unjust enrichment ***all*** hinge on Natural Cycles' purported disclosure of the "reproductive and sexual health information" that S.S. allegedly provided to Natural Cycles through the onboarding questionnaire and/or her website activity. *Id.* ¶ 176. And any such disclosure would have necessarily occurred in July 2023 given S.S.'s allegations that she received targeted advertisements in July 2023 as a result of the disclosures. *See generally id.* ¶¶ 176, 207–309. Thus, her remaining claims accrued more than two and a half years ago and are time-barred.

**3. S.S. does not plead facts sufficient to establish tolling.**

S.S. asserts that her claims are viable because she learned about Natural Cycles'

purported disclosures "shortly before filing" her complaint. *Id.* ¶ 196. But S.S. fails to satisfy her burden of pleading *facts* sufficient to justify tolling the statutes of limitations. *Javier*, 649 F. Supp. 3d at 901; *see, e.g.*, *Fodor v. AOL Time Warner, Inc.*, 217 F. App'x 622, 623 (9th Cir. 2007) (plaintiff could not rely on the delayed discovery rule to save a time-barred wiretapping claim, because the allegations in his complaint did "not explain why he could not have discovered this alleged wrongdoing earlier"); *Yumul v. SmartBalance, Inc.*, 733 F. Supp. 2d 1117, 1133 (C.D. Cal. 2010) ("Because Yumul has failed to plead facts sufficient to establish tolling under the delayed discovery rule or the fraudulent concealment rule . . . the court dismisses Yumul's complaint to the extent that it alleges conduct occurring outside the relevant statutes of limitations."). In fact, the Complaint forecloses tolling by establishing that S.S. was on inquiry notice of Natural Cycles' purported misconduct.

S.S. asserts that she could not have known that Natural Cycles shared her personal information with third parties because she opted out of cookies, because Natural Cycles "tout[ed] its data privacy protections," and because none of Natural Cycles' user-facing materials disclose the involvement of alleged third-party tracking companies in processing user information. Compl. ¶¶ 175, 195–97. Yet she affirmatively alleges that she received "specific targeted advertisements for Natural Cycles on social media platforms" in July 2023, "suggesting that her data had been used by Natural Cycles, Meta and TikTok[.]" *Id.* ¶ 176. As a result, S.S. is not entitled to tolling because she was on at least inquiry notice as to Natural Cycles' purported disclosure. *See, e.g.*, *Mandosia v. Bank of Am., NA*, 794 F. App'x 623, 625 (9th Cir. 2020) (holding that delayed discovery and fraudulent concealment can only delay accrual until a plaintiff "has, or should have, inquiry notice of the cause of action"); *Rustico v. Intuitive Surgical, Inc.*, 424 F. Supp. 3d 720, 737 (N.D. Cal. 2019) (rejecting tolling based on purported delayed discovery and fraudulent concealment due to inquiry notice), *aff'd*, 993 F.3d 1085 (9th Cir. 2021). Indeed, courts have held in similar circumstances that targeted advertisements put a plaintiff on inquiry notice of data-sharing claims. *See Rusow v. Skinspirit Essential LLC*, 2026 WL 453476, at *1 (N.D. Cal. Feb. 18, 2026) (granting motion to dismiss; finding plaintiff

"surely had inquiry notice when she began seeing [targeted] ads"); *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *10 (C.D. Cal. Feb. 27, 2025) (same).

S.S.'s assertion that she "lack[s] the technical expertise" to detect tracking, Compl. ¶¶ 194–99, or that she could not understand the full nature of Natural Cycles' conduct because it was "based on Defendants' use of highly technical proprietary software," *id*. ¶ 197, misses the point. The triggering event for the running of the statute of limitations of S.S.'s claims is not knowledge "of all parties" or "the exact legal claim[.]" *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 875 (N.D. Cal. 2022) (citing *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 932 (1994), and *Kyko Glob. Inc. v. Bhongir*, 2021 WL 4958989, at *1 (9th Cir. 2021)). Rather, the trigger is suspicion or imputed suspicion that one's injury "was caused by wrongdoing," *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988); *see also Anderson v. Brouwer*, 99 Cal. App. 3d 176, 182 (1979) (statements "that plaintiff could not reasonably have made an earlier discovery[] are useless"). Inquiry notice does not require understanding the precise technical mechanism by which Plaintiff's data may have been captured or shared—only that it was shared.

* * *

S.S.'s CMIA claims fail because she was not a "patient" of Natural Cycles since she never actually used its services. And S.S. was on at least inquiry notice of her remaining claims given the targeted advertisements she received two and a half years before filing her complaint, such that those remaining claims are time barred. *See United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (dismissing where statute of limitations defense was apparent on the face of the complaint); *Rusow v. Skinspirit Essential LLC*, 2025 WL 4657637, at *8 (N.D. Cal. Oct. 15, 2025) (same); *Saedi*, 2025 WL 1141168, at *12 (same). The Court should dismiss all of S.S.'s claims with prejudice.

**B. Plaintiffs' CIPA claims should be dismissed.**

Plaintiffs' claims under CIPA Sections 631, 632, and 638.51 fail under CIPA's one-year statute of limitations and on the merits.

**1. CIPA's one-year statute of limitations bars the remaining Plaintiffs' claims.**

S.A., A.S., and M.F. also pursue CIPA claims that are time barred. Their CIPA claims rests on the same purportedly wrongful disclosure as S.S.'s CIPA claim, and they received the same specific targeted advertisements for Natural Cycles that S.S. allegedly received around the time that they first used Natural Cycles' services. Compl. ¶¶ 168, 184, 192. And, like S.S., they first used Natural Cycles' services more than one year ago. *See id.* ¶¶ 178, 184 (May 4, 2023 as to A.S.), 164, 168 (September 28, 2023 as to S.A.), 186, 192 (January 15, 2024, as to M.F.). Their CIPA claims (counts 4, 5, and 6) are thus time barred for the same reasons as S.S.'s claim. *See supra* Sections IV.A.2 and IV.A.3.

Because the Complaint's allegations establish that each Plaintiff's CIPA claims accrued outside the limitations window, dismissal is warranted. *Rusow*, 2026 WL 453476, at *1 (granting motion to dismiss CIPA claims following inquiry notice from receipt of targeted ads); *Saedi*, 2025 WL 1141168, at *10 (same).

**2. Plaintiffs fail to state claims under CIPA Section 631(a)'s aiding-and-abetting clause because they do not plausibly allege a predicate violation.**

"To plead a violation of § 631(a), Plaintiff must allege sufficient facts to show that Defendant either (1) engaged in intentional wiretapping; (2) willfully read 'the contents or meaning' of a communication without consent; (3) attempted to use or communicate information obtained as a result of engaging in the previous two activities; or (4) aided another in any of the previous three activities." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 939 (N.D. Cal. 2024). Plaintiffs' CIPA theory is that Natural Cycles violated the fourth clause by "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with" the third parties to violate the first three clauses. Compl. ¶¶ 266, 274–75. But Plaintiffs fail to show violation of "the first, second, or third clause" as necessary to plead such "derivative liability" for Natural Cycles. *Smith*, 754 F. Supp. 3d at 940; *see also Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (dismissing CIPA aiding and abetting claim where the plaintiff "fail[ed] to establish an underlying third-party violation"); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) (same); *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112,

1126 (C.D. Cal. 2024) (same).

**a) Clause 1: No "telegraph or telephone" equipment.**

Plaintiffs assert that Natural Cycles allowed third parties to "tap" or "make [an] unauthorized connection" to their online communications. Compl. ¶¶ 273–74 (quoting the first clause of Cal. Penal Code § 631(a)). But the statutory text is clear: Section 631(a)'s first clause applies to a person who "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any **telegraph or telephone** wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal **telephonic** communication system[.]" Cal. Penal Code § 631(a) (emphasis added). And so, as a matter of grammar, under the first clause of Section 631, a person can only "tap" telephones or telephonic equipment, which are not at issue here. Accordingly, Plaintiffs' claim under the first clause fails because their claims concern internet, not telephonic, activity. *See, e.g.*, *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (dismissing claims against website provider and third-party software company because Section 631(a)'s first clause "concerns telephonic wiretapping specifically, which does not apply to the context of the internet"); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023) (dismissing claims based on "internet communications" because the first clause applies "only to communications over telephones and not through the internet"); *Matera v. Google Inc.*, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (similar).

**b) Clause 2: No "in transit" reading of content.**

Under the second clause, Plaintiffs must plausibly allege that a third party "willfully attempt[ed] to learn the contents or meaning of a communication in transit over a wire[.]" *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978) (quoting Cal. Penal Code § 631(a)). Plaintiffs fail to do so here.

Namely, Plaintiffs fail to plead facts to satisfy the "in-transit" requirement. Cal. Penal Code § 631(a).[3] Given the statutory language and theory of this case, Plaintiffs must plausibly

---

[3] Natural Cycles also disagrees with Plaintiffs' position that data elements such as "referring URLs, session information, unique user and device identifiers, and IP based geolocation data"

allege that Mixpanel, Addshoppers, Google, and TikTok undertook "some effort at understanding the substantive meaning of" the answers to their onboarding questionnaire, URLs reflecting such answers, and/or information tracked in the Natural Cycles application while it was being transmitted—not after. Cal. Penal Code § 631(a). This is difficult to show in the context of online communications, which are "near instantaneous and cannot be meaningfully read or understood until later." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025). Indeed, Plaintiffs' own allegations recognize that third-party marketers and advertisers typically collect information, often from multiple sources, which is "*later* viewed and used" for commercial purposes. Compl. ¶ 229 (emphasis added). The Complaint describes how AddShoppers compares information "against its database" and "*then* links" the information, *id.* ¶¶ 83–84 (emphasis added), and how Google "accessed" information "*then used* the information" for commercial purposes such as "creating targetable audience segments," *id.* ¶ 106 (emphasis added). Thus, the only logical inference to draw from the facts alleged is a multi-step process: collection, then storage, then an effort at reading and understanding. *See, e.g.*, *Torres*, 2025 WL 1135088, at *5 (describing similar steps and technology); *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1118 (same).

The Complaint's remaining allegations related to timing are either irrelevant or wholly conclusory. Plaintiffs' allegations about the timing of *transmission* have nothing to do with the timing of any effort to read or understand content. *See, e.g.*, Compl. ¶¶ 3–4, 60–62, 64, 75, 229, 266–67, 286, 291; *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1118 (recognizing that unlike its federal analogue, CIPA requires that a party "do something more than just intercept the communication while it is in transit to be held liable"); *Lewis v. Magnite, Inc.*, 2025 WL

---

constitute communications content. Compl. ¶ 265. However, mindful of this Court's prior decision that "the boundaries of what transferred information is content under the Act is better determined on a full evidentiary record," *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077 (N.D. Cal. 2023), Natural Cycles focuses here on other elements of the claim that are clearly deficient based on the pleadings alone, *cf. In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (holding that a URL was non-content even though it revealed that the user visited the "Facebook page of a gay support group" because information's sensitivity doesn't transform it into "content").

3687546, at *12 (C.D. Cal. Dec. 4, 2025) (same). And—outside the above factual allegations suggesting *later* reading—the sole allegations about the timing of efforts to "read" are wholly conclusory. *See* Compl. ¶¶ 116, 229, 269, 275.

The core "problem" for Plaintiffs is that CIPA's "statutory language was drafted with very different technology in mind[.]" *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1117. "California has failed to update § 631(a) to account for advances in technology since 1967," and it is "not our job to do it for them." *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring). Plaintiffs are not "without recourse" because the CCPA provides a bespoke legal framework regulating the collection of personal information and its use for advertising and marketing purposes—including through profiles created by third parties. *See id.* (noting that "plaintiffs like Gutierrez are not without recourse, thanks to the . . . CCPA"); *see also supra* Section III.B (describing CCPA framework). That is why Natural Cycles designed its product to comply with the CCPA—a law that Plaintiffs notably do not allege was violated here.

Plaintiffs do not plead facts to satisfy the in-transit requirement, so they do not plausibly allege violation of CIPA Section 631(a)'s second clause, justifying dismissal of their claim.

**c) Clause 3: No underlying violation of Clause 1 or 2.**

The third clause of Section 631(a) prohibits the use, attempted use, or communication of any information "obtained" in violation of the first two clauses. Cal. Penal Code § 631(a). As discussed above, Plaintiffs do not allege facts establishing a violation of either clause one or two. Without a predicate violation, any claim premised on the third clause necessarily fails.

**3. Plaintiffs fail to state a claim under Section 632 because they do not plausibly allege an "electronic amplifying or recording device."**

Section 632 prohibits use of an "electronic amplifying or recording device" to eavesdrop on or record confidential communications. Cal. Penal Code § 632(a). Although Section 632 does not define that phrase, courts interpreting other provisions of CIPA have held software is not a "device" under other CIPA provisions because it is not "equipment." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193–94 (N.D. Cal. 2019) ("Software like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA because they are not 'equipment.'" (citation

omitted)); *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) (holding that software is not a "device" because "[a] common meaning of 'device' is 'a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment'"); *see also Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) (applying *In re Google* to Section 632).

Some courts have rejected applying *In re Google* and *Moreno* to Section 632 claims, on the ground that Section 637.7 addresses tangible devices. *See, e.g.*, *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *17 (N.D. Cal. Oct. 10, 2025). But so does Section 632. It uses the term "device" twice, and it enumerates tangible communication equipment—"telegraph, telephone, or other device, except a radio"—as examples. Cal. Penal Code § 632(a). Applying *noscitur a sociis*, the phrase "electronic amplifying or recording device" should likewise be understood to require a physical device. *See, e.g.*, *People v. Drennan*, 84 Cal. App. 4th 1349, 1355 (2000); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575–76 (1995).

Plaintiffs' bare assertion that Mixpanel, AddShoppers, Google, and TikTok's technologies are "devices" under § 632(a) is conclusory, *see* Compl. ¶ 286, and they characterize the technologies as "software," not tangible equipment, *see, e.g.*, *id.* ¶¶ 60, 197, 262, 269, 296–99, 301. Natural Cycles recognizes that this Court has previously concluded that software qualifies as a "device" for purposes of Cal. Penal Code § 632. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023). Respectfully, Natural Cycles asks the Court to reconsider the issue here in light of the above.[4]

**4. Plaintiffs' Section 638.51 claim fails as inconsistent with the text, history, and purpose of the pen register provision.**

It is true that a number of federal courts, including this one, have allowed Section 638.51 claims to proceed past the pleadings stage based on facts similar to those alleged here. *See, e.g.*, *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *11 (N.D. Cal. Aug. 29, 2025). But the parties in those cases did not raise, or, respectfully, the courts did not fully consider, the precise arguments raised by Natural Cycles here—which show that Plaintiffs' expansive interpretation

[4] If the Court maintains its prior view, Natural Cycles preserves this issue for further review.

of the term "pen register" is irreconcilable with the statutory text and legislative history of the laws at issue.

Under California law, courts "begin with the text of the statute itself" but "do not examine that language in isolation," instead looking to "the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment." *Sass v. Cohen*, 10 Cal. 5th 861, 875 (2020). A "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information ["DRAS"] transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50(b). Section 638.51 provides that "a person may not install or use a pen register . . . without first obtaining a court order pursuant to Section 638.52 or 638.53." And under Section 638.52(d), the court order must include (if known) the identity "of the person to whom is leased or in whose name is listed the **telephone line** to which the pen register or trap and trace device is to be attached" and "[t]he number and, if known, physical location of the **telephone line[**.]" *Id.* (emphasis added).

Thus, the statutory text on its face targets telephone technologies. That focus is also consistent with the history of the statute, given that lawmakers were told at enactment in 2015 that the bill had two narrow law enforcement purposes: authorizing emergency orders for pen registers and clarifying the evidentiary burden for their use. Assemb. Comm. on Privacy and Consumer Prot., A.B. 929, Reg. Sess., at 4–5, 11–12 (Cal. Apr. 21, 2015). There is no record in the legislative history suggesting that anyone thought the bill extended to internet advertising technologies—which were well-established by 2015. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 268–69 (3d Cir. 2016) (discussing tracking technologies at length in 2016 appellate decision). These facts have led numerous state courts to limit the pen register law to telephonic technologies.[5]

---

[5] *See, e.g.*, *Schallert v. Orkin LLC*, 2025 WL 4332757, at *2 (Cal. Super. Ct. Dec. 15, 2025); *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, at *3 (Cal. Super. Ct. Dec. 10, 2025); *Hughes v. Dave & Buster's Ent., Inc.*, 2025 WL 2996811, at *1 (Cal. Super. Ct. July 16, 2025); *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025); *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024); *Licea v.*

Plaintiffs nevertheless argue that "[t]he cookies and the corresponding software code installed by [Natural Cycles] on the Natural Cycles website" qualify as "pen registers" because they collect Plaintiffs' "IP address[es], device identifiers, and user-agent information[.]" Compl. ¶ 296. Of course, none of those words appear in the text of the pen register law. And even if something like an "IP address" *could* be construed as DRAS (again, "dialing, routing, addressing, or signaling information"), that interpretation is at least debatable. Accordingly, the rule of lenity protects Natural Cycles from liability for purported violation of a criminal statute aimed at telephones and law enforcement investigations. *See, e.g.*, *Eating Recovery Ctr. LLC*, 806 F. Supp. 3d at 1118 (applying rule of lenity to "in transit" requirement and observing that the "conflicting rulings" of courts under CIPA to date have left "companies have no way of telling whether their online business activities will subject them to liability").

There is another textual problem with Plaintiffs' theory: Section 638.51 requires Natural Cycles to obtain a court order every time it collects DRAS—including IP addresses or device identifiers under Plaintiffs' theory. *See* Compl. ¶¶ 300–01. But collecting such information is necessary to route data to the correct destination across the entire internet. *See Zynga*, 750 F.3d at 1101. Thus, if Plaintiffs' theory were correct, nearly every website and app would need court orders to operate, an option not available to non-law enforcement entities. *See* Cal. Penal Code § 638.52. And while the Complaint suggests that consent would be a viable alternative, Compl. ¶ 299, the law's consent defense only extends to "providers of electronic or wire communication service," and that term does not cover most website and application operators. Cal. Penal Code § 638.51(b). Courts seriously considering these problems have rejected Plaintiffs' untenable expansion of the pen register law's prohibition, which would implicate "every website interaction that identifies electronic information about the user in a manner that allows the website to function." *See, e.g.*, *Heiting v. HP, Inc.*, 2025 WL 2993673, at *3–5 (Cal. Super. Ct. Aug. 1, 2025).

Finally, Plaintiffs' boundless interpretation would nullify the CCPA, which specifically

---

*Hickory Farms LLC*, 2024 WL 1698147, at *2 (Cal. Super. Ct. Mar. 13, 2024).

regulates the collection of data including IP addresses, location data, and cookies. *See supra* Section III.B. If the pen register law "categorically prohibit[s] collection of this data from website visitors, then the CCPA's provisions permitting reasonable collection of such data are a nullity." *Scharon v. Paramount Glob.*, 2025 WL 2996812, at *2 (Cal. Super. Ct. Oct. 3, 2025); *Rodriguez*, 2025 WL 4034985, at *3 (rejecting this "expansive reading of CIPA" given that "the CPPA expressly contemplates businesses will collect and use personal data"); *see also Eating Recovery Ctr.*, 2025 WL 2971090, at *1, *6 ("California has since adopted other statutes [besides CIPA] that more clearly speak to the practice of data sharing."); *Gutierrez*, 2025 WL 1895315, at *3 (recognizing same).

Just last year, the California Senate unanimously passed amendments to clarify that CIPA was "never intended to apply" to "website analytics" which "are already governed by the ... CCPA." Sen. Comm. on Pub. Safety, Analysis of S.B. 690, 2025–2026 Reg. Sess. (Cal. Apr. 25, 2025). That bill is now awaiting passage by the Assembly. A California Court of Appeals also recently agreed to review the scope of CIPA's pen register provision in a writ proceeding arising from *Rose v. Variety Media LLC*, 2025 WL 2794920, at *3–4 (Cal. Super. Ct. L.A. Cnty. Sept. 24, 2025). *See* Thompson Decl. Exs. A, B. Natural Cycles respectfully asks this Court to recognize the targeted focus of Section 638.51 and to dismiss Plaintiffs' pen register claims.[6]

**C. Plaintiffs' intrusion upon seclusion claim fails because they voluntarily shared their information with Natural Cycles.**

To adequately plead intrusion upon seclusion under California common law, Plaintiffs must plead: "(1) a defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion occurred in a manner highly offensive to a reasonable person." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d

[6] Even if the pen register statute applied to online advertising technologies (it does not), most of the data at issue is not akin to "the numbers dialed on a telephone." Plaintiffs' own "unique user and device identifiers, and IP based geolocation data," Compl. ¶ 265, reveal the origin or source of a communication. Under Section 638.51's plain text, none of this data can underlie a pen register claim because it does not involve the recording of outgoing information. *See Rodriguez v. Sparc Grp., LLC*, 2025 WL 2993671, at *3 (Cal. Super. Ct. July 9, 2025); *Rodriguez v. Plivo Inc.*, 2024 WL 5184413, at *2 (Cal. Super. Ct. Oct. 2, 2024).

1182, 1193 (N.D. Cal. 2020) (internal quotations omitted). An intrusion upon seclusion claim cannot stand where "a plaintiff voluntarily provides information to a defendant," because "one cannot logically intrude into communications to which they are a party." *Saedi*, 2025 WL 1141168, at *6, *8 (collecting cases holding the same).

Plaintiffs' intrusion upon seclusion claims are based exclusively on the alleged disclosure of their data to third parties. *See* Compl. ¶¶ 234–238; *see also id.* ¶¶ 167, 173, 175, 181, 183, 189, 192. Plaintiffs allege that they affirmatively furnished *all* of this information directly to Natural Cycles. *See, e.g.*, *id.* ¶¶ 165, 171, 179, 187. Many courts have dismissed intrusion upon seclusion claims based on nearly identical allegations—i.e., where a plaintiff voluntarily provided information to a healthcare provider, which enabled access by a third-party analytics provider. *See, e.g.*, *Saedi* 2025 WL 1141168, at *8; *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024); *Kurowski v. Rush Sys. for Health,* 659 F. Supp. 3d 931, 944 (N.D. Ill. 2023); *see also T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024), *reconsideration denied*, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024), and *appeal dismissed*, 2025 WL 1894802 (11th Cir. May 9, 2025); *K.L. v. Legacy Health*, 2024 WL 4794657, at *7 (D. Or. Nov. 14, 2024).

Because Natural Cycles cannot "intrude" on information that Plaintiffs have voluntarily provided to Natural Cycles, their intrusion claim fails.

### D. Plaintiffs' California Constitutional privacy claim (Article I, § 1) fails because Plaintiffs seek only damages.

As this Court has recognized, Article I, Section 1 of the California Constitution authorizes injunctive relief to stop ongoing violations of the right to "privacy," but does not create a private right to recover damages. *See Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (citizens may seek to enjoin violations; damages unavailable); *see also Bates v. Arata,* 2008 WL 820578, at *4 (N.D. Cal. Mar. 26, 2008) (no private right of action for damages under Art. I, § 1), *order clarified sub nom. Bates v. S.F. Sheriff's Dep't*, 2008 WL 961153 (N.D. Cal. Apr. 7, 2008); *Allen v. County of Sonoma*, 2017 WL 3593340, at *5 (N.D. Cal. Aug. 18, 2017) (noting absence of case law allowing damages; dismissing damages

request); *Cousin v. Sharp Healthcare,* 702 F. Supp. 3d 967, 974 (S.D. Cal. 2023) (reaffirming injunctive-only nature and dismissing damages claim); *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2015 WL 13273308, at *13 (C.D. Cal. July 29, 2015) (striking request for damages under Art. I, § 1); *Clausing v. San Francisco Unified School District*, 221 Cal. App. 3d 1224, 1238 (1990) (sustaining demurrer where appellants sought injunctive relief and damages).

Here, Plaintiffs seek actual damages, disgorgement, and punitive damages, and do not request injunctive relief for the California constitutional claim. Compl. ¶¶ 254–55. Because the only remedies sought are legally unavailable, Plaintiffs' Article I, § 1 claim should be dismissed.

**E. Plaintiffs cannot recover for unjust enrichment.**

Unjust enrichment is not a standalone cause of action, though some courts will construe such a claim as a quasi-contractual claim for restitution. *See Griffith v. TikTok, Inc.*, 2023 WL 9019035, at *1, *6 (C.D. Cal. Dec. 13, 2023) (collecting cases). Even assuming arguendo that a quasi-contractual relationship exists here,[7] Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs have not pleaded facts sufficient to show that they lack an adequate remedy at law.

Restitution is an equitable remedy. *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 648 (N.D. Cal. 2024) ("The remedy for an unjust enrichment claim is equitable restitution."), *reconsideration denied*, 2024 WL 4592367 (N.D. Cal. Oct. 28, 2024). Accordingly, Plaintiffs must plausibly allege that legal remedies, such as statutory damages, are insufficient to make them whole. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (holding that plaintiffs seeking equitable relief in a federal court must establish that they lack an adequate remedy at law).

---

[7] S.A., A.S., and M.F. have all entered into contractual agreements with Natural Cycles, as explained in Natural Cycles' contemporaneously filed motion to compel arbitration. They will, therefore, ultimately be unable to recover based on a quasi-contract theory. *See, Brodsky*, 445 F. Supp. 3d at 133–34 ("[A] plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." (citation omitted)).

Plaintiffs' Complaint includes only a conclusory assertion, parroting the legal standard, that "Plaintiffs and Class Members have no adequate remedy at law[.]" Compl. ¶ 277. But Plaintiffs offer no explanation as to why the legal remedies that *they* seek—such as for statutory damages under CMIA and CIPA—are inadequate. This justifies dismissal of their claim. *See, e.g.*, *Vance v. Google LLC*, 2024 WL 5011611, at *7 (N.D. Cal. Dec. 5, 2024) (dismissing unjust enrichment claim where complaint parroted inadequate remedy language but did not "allege any specific facts showing that the restitution or disgorgement [plaintiffs] seek would exceed the legal remedies available to them under BIPA"); *Nacarino v. Chobani, LLC*, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021) (dismissing where plaintiff "fail[ed] to allege any specific facts—*e.g.*, that she would receive less compensation via damages than restitution—showing that damages under the CLRA are necessarily 'inadequate or incomplete, and nothing in the record supports that conclusion'" (citation omitted)).

## V. CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiffs' Complaint.

Dated: March 30, 2026

**PERKINS COIE LLP**

By: */s/ Nicola C. Menaldo*
Nicola C. Menaldo, *pro hac vice*
Anna Mouw Thompson, *pro hac vice*
Timothy M. Carter, Bar No. 335212

Attorneys for Defendants NATURALCYCLES USA CORPORATION AND NATURALCYCLES NORDIC AB