**PARASMO LIEBERMAN LAW**
Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
8149 W. Santa Monica Blvd., #611
West Hollywood, California 90046
Telephone: (646) 509-3913

*Counsel for Plaintiffs and the Proposed Classes*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

S.A., S.S., A.S., and M.F., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NATURALCYCLES USA CORPORATION AND NATURALCYCLES NORDIC AB,

Defendants.

Case No. 3:25-cv-10421-WHO

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Judge: Hon. William H. Orrick
Date: July 8, 2026
Time: 2:00 pm
Location: Courtroom 2, 17th Floor

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 2

III. STATEMENT OF FACTS ........ 2

A. Overview of the Natural Cycles fertility tracking and birth control app. ........ 2

B. Defendants embedded hidden tracking technologies that transmitted personally identifiable reproductive and sexual health data to third parties for analytics and advertising purposes. ........ 3

C. Natural Cycles falsely told consumers they could opt out of tracking. ........ 5

D. Plaintiffs' individual allegations ........ 5

IV. ARGUMENT ........ 6

A. S.S. states a claim under CMIA because she fits squarely into the statutory definition of a "patient" ........ 6

B. Plaintiff S.S. is entitled to tolling under both the discovery rule and fraudulent concealment doctrine, and she has sufficiently pleaded the basis for each. ........ 9

C. Plaintiffs S.A.'s and M.F.'s CIPA claims are timely even absent tolling, and A.S.'s claims are tolled for the same reason as S.S.'s. ........ 13

D. Plaintiffs sufficiently allege the "in-transit" requirements of § 631(a). ........ 14

E. The third-party software is a "device" under § 632. ........ 17

F. Plaintiffs allege a pen register claim under Section 638.51. ........ 18

G. Plaintiffs adequately pled intrusion upon seclusion claims. ........ 21

H. Plaintiffs' California Constitutional Privacy Claim (Article I, § 1) survives because Defendant only challenges the remedy, not the allegations. ........ 22

I. Plaintiffs can recover for unjust enrichment. ........ 23

V. CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Cases**

*Aryeh v. Canon Bus. Sols, Inc.*, 55 Cal. 4th 1185 (2013) ........ 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 3

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ........ 24

*B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. 2024) ........ 23

*B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 12

*Beltran v. Drs. Med. Ctr. of Modesto,* 2025 WL 1635467 (E.D. Cal. June 9, 2025) ........ 8

*Bliss v. CoreCivic, Inc.*, 978 F.3d 1144 (9th Cir. 2020) ........ 15

*Bradshaw v. Lowe's Cos., Inc.,* No. 25CV0742 DMS (MMP), 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ........ 22

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 14

*Calhoun v. Google LLC,* 526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 15

*Clausing v. S.F. Unified School Dist.*, 221 Cal. App. 3d 1224 (1990) ........ 24

*Cook v. Brewer*, 637 F.3d 1002 (9th Cir. 2011) ........ 2

*Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 23

*Crowder v. Shade Store, LLC,* No. 23-CV-02331-NC, 2025 WL 754067 (N.D. Cal. Mar. 10, 2025) ........ 25

*D'Angelo v. Penny Opco, LLC,* No. 3:23-cv-00981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........ 16

*Doe v. Eating Recovery Ctr.*, No. 23-CV-05561-VC, 2025 WL 2983143 (N.D. Cal. Oct. 17, 2025) ........ 8, 16

*Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ passim

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................... 18

*Doe v. Regents of Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .................... 18, 24

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025).................... 12, 16

*Fregosa v. Mashable, Inc.*,
No. 25-CV-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) .................... 21

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .................... 11, 13, 19, 23

Gaige v. Exer Holding Co., *LLC*,
No. 2:24-cv-06099-AH-AJR, 2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .................... 12, 14

*Harris v. iHeartMedia, Inc.*,
No. 25-CV-6038-EKL, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026).................... 22

*Hassid v. Alex & Ani, LLC,*
816 F. Supp. 3d 1196 (C.D. Cal. 2026) .................... 21

*Hazel v. Prudential Fin., Inc.,*
No. 22-CV-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023).................... 17

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .................... 23

*In re BetterHelp, Inc. Data Disclosure Cases*,
2024 WL 3416511 (N.D. Cal. 2024) .................... 24

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .................... 18

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................... 17

*Johnson v. Trumpet Behav. Health, LLC*,
No. 3:21-CV-03221-WHO, 2022 WL 74163 (N.D. Cal. Jan. 7, 2022).................... 24

*Julian v. Mission Cmty. Hosp.*,
11 Cal. App. 5th 360 (2017) .................... 24

*Katzberg v. Regents of Univ. of Cal.*,
29 Cal. 4th 300 (2002) .................... 23

*Lewis v. Magnite, Inc.,*
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) .................... 17

*Libman v. Apple, Inc.,*
No. 22-CV-07069-EJD, 2024 WL 4314791 (N.D. Cal. Sept. 26, 2024).................... 18

*Mirmalek v. L.A. Times Commc'ns LLC*,

No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)................................ 22

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........................................................................... 21

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ................................................................. 18

*Nelson v. Reddit, Inc.*,
No. 25-CV-1470 JLS (AHG), 2026 WL 445627 (S.D. Cal. Feb. 17, 2026) ...................... 21, 22

*Oden v. Bd. of Admin.*,
23 Cal. App. 4th 194 (1994) .............................................................................................. 19

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (2016)............................................................................................... 23

*Ovando v. County of Los Angeles*,
159 Cal. App. 4th 42 (2008) .............................................................................................. 10

*People v. Drennan*,
84 Cal. App. 4th 1349 (2000) ............................................................................................ 19

*People v. Lucero*,
41 Cal. App. 5th 370 (2019) .............................................................................................. 19

*Pettus v. Cole*,
49 Cal. App. 4th 402 (1996) ............................................................................................ 7, 9

*R.C. v. Sussex Publishers, LLC*,
No. 24-CV-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025).................................... 18

*Reichman v. Poshmark, Inc.*,
267 F. Supp. 3d 1278 (S.D. Cal. 2017)................................................................................ 18

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ......................................................................... 20, 21

*Rusow v. SkinSpirit Essential LLC*,
No. 24-CV-09317-CRB, 2026 WL 453476 (N.D. Cal. Feb. 18, 2026)............................. 12, 13

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-CV-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .................... 12, 23

*Scharon v. Paramount Glob.*,
2025 WL 2996812 (Cal. Super. Ct. Oct. 3, 2025) .............................................................. 21

*Semien v. PubMatic Inc.*,
No. 25-CV-03164-SI, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ........................................ 19

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) ................................................ 20, 22

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)............................................................................................... 24

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir. 1995) ........ 10

*Torres v. Prudential Fin.*, Inc.,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 16

*U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*,
720 F.3d 1174 (9th Cir. 2013) ........ 15

*United States v. Stevens*,
559 U.S. 460, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) ........ 19

*Veritas Techs. LLC v. Cushman & Wakefield, Inc.*,
No. 21-CV-01467-CRB, 2022 WL 222527 (N.D. Cal. Jan. 25, 2022) ........ 25

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ........ 8

**Statutes**

Cal. Civ. Code § 1798.120 ........ 15

Cal. Civ. Code § 1798.145 ........ 10

Cal. Civ. Code § 1798.150 ........ 15

Cal. Civ. Code § 1798.175 ........ 21

Cal. Civ. Code § 56.05 ........ passim

Cal. Civ. Code § 56.06 ........ 9, 10

Cal. Civ. Code § 56.10 ........ 6

Cal. Civ. Code § 56.101 ........ 6, 7

Cal. Penal Code § 631 ........ 15

Cal. Penal Code § 632 ........ 15, 19

Cal. Penal Code § 638.50 ........ 20

Fed. R. Civ. P. 12 ........ 2

Fed. R. Civ. P. 8 ........ 2

## I. INTRODUCTION

Natural Cycles promised users their reproductive and sexual health data would stay private. It broke that promise. Natural Cycles embedded hidden tracking code that transmitted Plaintiffs' most intimate health information—menstrual cycles, sexual activity, pregnancy status, medical conditions—to Mixpanel, AddShoppers, Google, and TikTok in real time, for commercial gain. Compl. ¶¶ 46-140, 163. The tracking continued even after Plaintiffs explicitly rejected non-essential cookies. *Id.* ¶¶ 174–75, 182–83, 190–91. Plaintiffs S.A., S.S., A.S., and M.F. bring claims for violations of the California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56, *et seq.*; intrusion upon seclusion; violation of the California Constitution, Article I, § 1; violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 632, and 638.51; and unjust enrichment.

*First*, S.S. sufficiently alleges she received health care services from Natural Cycles, which satisfies her pleading burden. Compl. ¶¶ 171, 217. Further, submitting medical information to a provider is sufficient under CMIA; no payment, subscription, or formal relationship is required. *Pettus v. Cole*, 49 Cal. App. 4th 402, 429 (1996).

*Second*, this Court has already twice held that the statute of limitations is tolled when, like here, plaintiffs lack technical expertise to detect hidden trackers and learn of the conduct shortly before filing. *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 869-870 (N.D. Cal. 2025) (Orrick, J.); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) (Orrick, J.). S.S., A.S., S.A., and M.F. fit both criteria. S.A.'s and M.F.'s claims are also independently timely.

*Third*, Plaintiffs adequately allege the "in transit" requirement of § 631(a). Compl. ¶¶ 3, 5, 7, 8, 48, 60, 62, 75, 116, 266-67, 269, 275, 286, 291. Natural Cycles tries to raise the pleading standard by demanding even more detail, but no more is required under Rule 8(a)(2). *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (collecting cases).

*Fourth*, third-party software is a "device" under § 632. This Court already so held in *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) (Orrick, J.).

*Fifth*, Plaintiffs adequately allege a pen register claim under § 638.51. This Court has rejected the argument that internet technologies are not "pen registers." *Gabrielli.*, 815 F. Supp. 3d at 871.

Natural Cycles raises the same arguments other courts in this district have already rejected, and which "tread no new ground." *Semien v. PubMatic Inc.*, 2026 WL 216333, at *10-11 (N.D. Cal. Jan. 27, 2026).

*Sixth*, Plaintiffs adequately allege intrusion upon seclusion. This Court has already held materially similar allegations state a claim. *Gabrielli*, 815 F. Supp. 3d at 868; *FullStory*, 712 F. Supp. 3d at 1257.

*Seventh*, Natural Cycles challenges only the remedy for Plaintiffs' California constitutional privacy claim, not the elements. Whether damages are available is unsettled, but the Court should allow the claim to proceed in any event. *In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *2-3 (N.D. Cal. 2024).

*Eighth*, Plaintiffs' unjust enrichment claim survives. Plaintiffs allege they lack an adequate remedy at law, which is all that is required at the pleading stage. *Johnson v. Trumpet Behav. Health, LLC*, (N.D. Cal. Jan. 7, 2022) (Orrick, J.).

For the reasons set forth below, Natural Cycles' motion to dismiss should be denied.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).

## III. STATEMENT OF FACTS

### A. Overview of the Natural Cycles fertility tracking and birth control app.

Natural Cycles is a fertility tracking and digital birth control app available on mobile and web, marketed as an FDA-cleared Class II medical device and a science-based alternative to hormonal

contraception. Compl. ¶¶ 27-28, 32. The app operates in multiple modes tailored to a user's reproductive stage (e.g., birth control, plan pregnancy, follow pregnancy, postpartum, and perimenopause) and prompts users to input deeply intimate data on a daily basis, including basal body temperature, menstrual cycle data, sexual activity, libido, cervical mucus, ovulation and pregnancy test results, mood, sleep, pain, physical symptoms and personal notes. *Id.* ¶ 30- 31; 40-42.

Before subscribing, users complete an onboarding questionnaire disclosing personally identifiable information and sensitive reproductive health data, including name, age, email, fertility goals, contraceptive history, hormonal birth control and side effects, hormone therapy use, pregnancy status, and medical conditions such as polycystic ovary syndrome, endometriosis, thyroid disorders, sexual activity, and other highly sensitive data. *Id.* ¶¶ 34-39.

Natural Cycles actively solicited this disclosure by assuring users at the very first steps of onboarding flow that it "keeps your data safe" (*Id.* ¶ 35) and by statements on its website that "your data stays yours," and that it will "never monetize your data by selling it to third parties" and it "does not share sensitive data with third parties" without explicit consent. *Id.* ¶¶ 35, 44, 150, 158.

Plaintiffs and Class Members relied on those representations in disclosing their sensitive reproductive and sexual health information, combined with personally identifying information, which created a continuous, real-time record of their most intimate bodily and reproductive lives. *Id.* ¶¶ 35, 43–45, 150, 154–60.

**B. Defendants embedded hidden tracking technologies that transmitted personally identifiable reproductive and sexual health data to third parties for analytics and advertising purposes.**

Despite promising users their data would stay private, Defendants embedded hidden tracking technologies from Mixpanel, AddShoppers, Google, TikTok and others into their website and app—for commercial gain. *Id.* ¶¶ 46-140, 163. The disclosed data is extraordinarily valuable: pregnancy and fertility information commands premiums far exceeding ordinary consumer data because it enables targeting of consumers at critical life stages. ¶¶ 9, 141–143.

Mixpanel's tracking code fires at every stage of user interaction. During onboarding, it captures the substantive content of the questions and answers to the questionnaire—including name,

age, email, fertility goals, birth control methods, hormone therapy, side effects, and medical conditions—along with full page URLs revealing pregnancy, postpartum, planning, prevention, or perimenopause status, and persistent device identifiers enabling cross-session tracking. ¶¶ 4, 54–57.

> For instance, when asked "Do you have any medical conditions that can affect your cycle?" and the user selected Polycystic ovary syndrome ("PCOS"), Natural Cycles transmitted both the question and the user's selected answer in clear text to Mixpanel's servers: "question": "medical Conditions", "answer": ["pcos"]." This transmission included the user's device ID, distinct ID, name, and internal custom event label, tying the disclosed reproductive health information to a persistent user profile.

*Id.* ¶ 56. After subscription, Mixpanel received real-time event data for virtually every website and app interaction: daily menstrual entries, symptoms, ovulation and fertility predictions, sexual activity, pregnancy test results, and daily fertility status determinations, *inter alia*. *Id.* ¶¶ 5, 60–64. Mixpanel also received advertising identifiers, including campaign IDs, Meta and TikTok ad-tracking flags, confirming that this data collection served advertising and commercial purposes unrelated to fertility services. *Id.* ¶ 65.

The Complaint alleges in detail that all four trackers received protected reproductive health information under CMIA § 56.05(q), which expressly covers not only direct disclosures but "information from which one can infer someone's pregnancy status, menstrual cycle, fertility, hormone levels, birth control use, or sexual activity." *Id.* ¶¶ 127–140.

AddShoppers received full onboarding URLs revealing users' reproductive health status and fertility goals, enabling it to match them against a database of 175 million email addresses, and use that data to send targeted marketing emails—including to users who never provided AddShoppers their email address. *Id.* ¶¶ 6, 71–87.

Google received complete URLs, titles, and navigation paths revealing reproductive health status in real time that enabled Google to build advertising audiences and power remarketing campaigns. *Id.* ¶¶ 88–108.

TikTok received the same URL and referrer data, allowing it to reconstruct each user's complete fertility journey—whether they were trying to conceive, prevent pregnancy, currently pregnant, postpartum, or perimenopausal—and link that profile to users' TikTok identities for

targeted advertising. *Id.* ¶¶ 109–126.

**C. Natural Cycles falsely told consumers they could opt out of tracking.**

Natural Cycles presented users with a cookie consent banner offering the option to reject non-essential cookies, including analytics and marketing trackers. *Id.* ¶¶ 144–45. A reasonable user would understand that rejecting those cookies disables third-party tracking. *Id.* ¶¶ 147-48. It does not. Natural Cycles continued to deploy Mixpanel and AddShoppers tracking code during onboarding even when users declined non-essential cookies, regardless of browser or device. *Id.* ¶¶ 53, 59, 78, 148. These transmissions occur regardless of browser or device type and persist even after users explicitly reject non-essential cookies. *Id.* ¶¶ 53, 59, 78.

**D. Plaintiffs' individual allegations**

Plaintiffs S.A., S.S., A.S., and M.F. are California residents who used the Natural Cycles website and/or mobile application between 2023 and 2025. *Id.* ¶¶ 164, 170, 178, 186.

| Plaintiff | Platform | Period of Use |
|---|---|---|
| S.A. | Website and Mobile App | Sept. 2023; re-subscribed in Jan. 2025 and used through Mar. 2025 |
| S.S. | Website only | July 2023 (did not subscribe) |
| A.S. | Website and Mobile App | May 2023–Feb. 2024 |
| M.F. | Website and Mobile App | Jan. 2024–before action filed |

Each Plaintiff disclosed sensitive reproductive and sexual health information to Natural Cycles through the onboarding questionnaire and, except for S.S., through daily in app tracking for over a period of months to years. *Id.* ¶¶ 165, 171, 179, 187. That information included names, dates of birth, email addresses, fertility goals, past hormonal birth control use and associated side effects, menstrual cycle data, basal body temperature, ovulation and pregnancy test results, sexual activity, sleep patterns, emotional states, and medical conditions such as polycystic ovary syndrome and thyroid disorders. *Id.*

Each Plaintiff believed her information would remain private and did not consent to third-party disclosure. *Id.* ¶¶ 166-67; 172-73; 180-82; 188-89. Three of the four Plaintiffs—S.S., A.S., and M.F.—affirmatively rejected all non-essential cookies and reasonably believed their choice was

honored. It was not. *Id.* ¶¶ 174–75, 182–83, 190–91.

None of the Plaintiffs discovered Natural Cycles' misuse and data sharing practices until shortly before this Complaint was filed. *Id.* ¶ 196. Natural Cycles' concealment, through affirmative misrepresentations about privacy and a cookie opt-out mechanism it did not honor, prevented earlier discovery. *Id.* ¶¶ 194-198.

## IV. ARGUMENT

### A. S.S. states a claim under CMIA because she fits squarely into the statutory definition of a "patient"

As an initial matter, Natural Cycles challenges only S.S.'s California Confidentiality of Medical Information Act ("CMIA") claims under Cal. Civ. Code §§ 56.10 and 56.101 on the ground that she is not a "patient." Mot. at 8. Since M.F. is undisputedly not subject to arbitration, her CMIA claims, and by extension, the class claims survive regardless. And because S.A.'s and A.S.'s claims are not subject to arbitration, their claims survive as well. *See* Pls.' Opp'n to Mot. to Compel Arbitration.

S.S. completed Natural Cycles' onboarding questionnaire and provided her reproductive and sexual health information. Compl. ¶ 171. Natural Cycles' sole challenge is that S.S. did not ultimately pay for and subscribe to an account with Natural Cycles. Natural Cycles asserts that S.S. did not, therefore, receive "health care services," and is not a "patient" who can bring a claim for its sharing of her "medical information," specifically, her "reproductive or sexual health application information" without her consent. Mot. at 8-9. This argument fails.

*First*, Natural Cycles is a "provider of health care" under § 56.06 (b) and (e). Compl. ¶¶ 208-214. CMIA defines "patient" as "a natural person, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains." Cal. Civ. Code § 56.05(m). Section 56.06(b) and (e) apply to a business that offers "software or hardware to *consumers*" or a "reproductive or sexual health digital service to a *consumer*." Cal. Civ. Code § 56.05(b), (e) (emphasis added).

S.S. alleges she was seeking an alternative to hormonal birth control and took the Natural Cycles onboarding questionnaire on its website to determine whether the Natural Cycles birth

control was right for her. Compl. ¶ 171. She supplied answers to the questionnaire at https://signup.naturalcycles.com and, in so doing, disclosed her personally identifying information and sensitive reproductive and sexual health information. *Id*. She also disclosed a suspected condition (polycystic ovary syndrome) affecting her menstrual cycles for the purpose of determining whether Natural Cycles was suitable in light of that medical condition. *Id.* S.A. alleges she "received health care services" *Id*. ¶ 217.

That S.S. did not pay or subscribe is beside the point. Natural Cycles' onboarding questionnaire is designed to solicit sensitive reproductive and sexual health information to facilitate reproductive and sexual health services. Compl. ¶¶ 34, 36-37, 39-40. Natural Cycles does not explain why its provision of the onboarding questionnaire and S.S.'s completion of it does not qualify as "receiving health care services." Taking S.S.'s allegations as true, she has alleged sufficient facts to state a CMIA claim.[1]

*Second*, Natural Cycles' theory that "patient" status under CMIA requires payment, subscription, or any other formal relationship, is contrary to the statutory text, inconsistent with the statutory scheme, and squarely rejected by the California Court of Appeal. *Pettus v. Cole*, 49 Cal. App. 4th 402, 429 (1996). *Pettus* dealt with the precise scope of "patient" under CMIA. *Id.* There, plaintiff provided "highly sensitive medical information" to a doctor which was shared with his employer. *Id.* The defendant doctor contended that no health care services "were provided to or received by" the plaintiff, who saw the doctor only "on one occasion, no care or treatment was contemplated, and no doctor/patient relationship existed between them." *Id.* The doctor argued the plaintiff was thus not a "patient" under CMIA. *Id.*

The court rejected the argument because in analyzing CMIA the definition of patient must be "construed in relation to the other statutory definitions and in view of the statute's purpose." *Id.* The drafters of CMIA "failed to define the precise level of interaction between the provider and the subject necessary to constitute 'health care services.'" *Id.* The court noted that although there was

[1] S.S. also brings a claim under § 56.101(a). Compl. ¶¶ 226- 228. That section does not require a plaintiff be a "patient" to bring a claim. *See* Cal. Civ. Code § 56.101. It does require "Medical information," which includes "information about a *consumer's* reproductive health…" Cal. Civ. Code § 56.05(j)(1), (q) (emphasis added).

no traditional doctor/patient relationship, the Legislature clearly intended CMIA to afford employees who were examined by a doctor at the request of a third party the right of confidentiality in their medical reports. *Id.* at 430-431. The plaintiff was "clearly, a 'patient.'" *Id.*

Natural Cycles urges the Court to read into "patient" a requirement that the provider have done more than collect medical information from the consumer, specifically, that the consumer must have signed up for a subscription and obtained full access to the app. Mot. at 9. That is a rewrite of the statute. There is no basis in law or logic for such a result. Indeed, "logic dictates that in order for a health care provider to gather medical information about a person, the provider must have dealt with the person at some level and performed professional services of some type." *Pettus*, 49 Cal. App. 4th at 429. Natural Cycles performed that type of service for S.S. when it solicited her medical information and used it to evaluate the medical appropriateness of its medical device.

Natural Cycles relies on *Doe v. Eating Recovery Ctr.* But that case decided the "patient" issue on a full record at summary judgment—not at the pleading stage. *Doe v. Eating Recovery Ctr.*, No. 23-CV-05561-VC, 2025 WL 2983143, at *1 (N.D. Cal. Oct. 17, 2025). Even on its facts, *Doe* is distinguishable. The plaintiff there "browsed" several pages of an eating recovery center's website and it wasn't clear whether plaintiff "completed the quiz and the form." *Id.* The court also indicated that had plaintiff communicated "about treatment options" through the website, she may have been a "patient" under CMIA. *Id.* Here, S.S. did precisely that. Compl. ¶ 172.[2]

Thus, S.S. is clearly, a "patient" under CMIA. [3]

---

[2] Natural Cycles also cites *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 901 (S.D. Cal. 2025), and *Beltran v. Drs. Med. Ctr. of Modesto*, 2025 WL 1635467, at *9 (E.D. Cal. June 9, 2025). Mot. 9. Neither is on point: *Zarif* held the plaintiff merely stated a "formulaic recitation of the elements" of CMIA but failed to allege "she purchased any medications, inputted her medical history, or received any health care services." 789 F. Supp. 3d at 901. The court did not discuss the definition of "patient." *Beltran* found that plaintiffs failed to allege that defendants were their "providers of healthcare" and failed to allege that defendants transmitted plaintiffs' "medical information." 2025 WL 1635467, at *9. Moreover, *Beltran* did not discuss what constitutes a "patient" when the provider falls under § 56.06 (b) and (e).

[3] Natural Cycles' reading would also leave the same medical information protected for paying consumers but not for non-paying ones. The CCPA exempts "medical information"—which includes "information about a consumer's reproductive health"—governed by CMIA. Cal. Civ. Code § 1798.145(c)(1)(A), Cal. Civ. Code §§ 56.05(j)(1), 56.05(q). Non-paying consumers' data could fall outside both statutory schemes.

**B. Plaintiff S.S. is entitled to tolling under both the discovery rule and fraudulent concealment doctrine, and she has sufficiently pleaded the basis for each.**

Natural Cycles does not assert S.S.'s CMIA claims are untimely.[4] S.S. does not contest her CIPA claims are subject to a one-year statute of limitations. Mot. at 10. Plaintiffs' claims, however, are tolled under the delayed discovery rule and are independently tolled under the fraudulent concealment doctrine.

"A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995). "The question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. County of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008). To adequately plead a basis for the discovery rule, a plaintiff must "plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Gabrielli v. Haleon US Inc*., 815 F. Supp. 3d 852, 869 (N.D. Cal. 2025) (Orrick, J.).

Plaintiff alleges she discovered the conduct from counsel shortly before filing this Complaint and could not have discovered that conduct earlier. Compl. ¶ 196. She alleges she "lack[s] the technical expertise required to determine whether [the] Natural Cycles website. . . honored [her] cookie rejection choices or employed hidden tracking technologies. . . ." Compl. ¶ 197. Nor could she "identify what network traffic was transmitted to third parties." Compl. ¶ 197.

This Court has already twice ruled that the statute of limitations for CIPA claims is tolled based on the delayed discovery rule and applies to situations, like here, premised 1) "on defendants' use of highly technical software," and 2) where "the plaintiff did not learn of the injury until shortly before filing the suit." *Gabrielli*, 815 F. Supp. 3d at 869–870; *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) (Orrick, J.) (same).

---

[4] Thus, assuming an unjust enrichment claim "is based on the nature of the underlying wrong" as Natural Cycles asserts (Mot. at 11), it is timely because her CMIA claim is timely.

Natural Cycles argues, despite S.S.'s allegations, that her receipt of "specific targeted advertisements" for Natural Cycles on social media platforms in July 2023 placed her on "inquiry notice" as to Natural Cycles' alleged misconduct and bars tolling as a matter of law. Mot. at 11-12. She was not.

As an initial matter, S.S. does not rely on the ads as evidence of Natural Cycles' wrongful conduct. The targeted ads are not what put her on notice of wrongdoing. Rather, now that she knows Natural Cycles shared user data—even from consumers who rejected cookies—she can plausibly infer her data was among the data shared. There are multiple lawful explanations for receiving an ad, and a reasonable consumer who had rejected cookies and relied on a company's privacy representations has no reason to treat an ad as a sign those promises were broken.

Courts have found tolling in the CIPA context where plaintiffs alleged they received targeted advertisements. In *Gaige v. Exer Holding Co., LLC,* the court found plaintiff sufficiently alleged tolling because "he did not know and had no way of knowing that his personally identifiable information ("PII") and/or personal health information ("PHI") was intercepted and unlawfully disclosed to Meta, Google, and potentially other third parties because Defendant kept this secret." *Gaige v. Exer Holding Co., LLC*, No. 2:24-cv-06099-AH-AJR, 2025 WL 559719, *3 (C.D. Cal. Mar. 2, 2025). There, like here, the plaintiff alleged he received targeted advertisements following his website use. *Id.* at *7. ("Plaintiff, following his use of the Website, started receiving targeted advertisements related to his specific medical conditions on his Facebook or Instagram accounts." *Id.* (*citing* Compl. ¶ 181).

Similarly, in *Tenet Healthcare,* the court found tolling warranted where plaintiffs alleged defendants "secretively incorporated Meta Pixel and other trackers into their websites, providing no indication to users that they were interacting with a website enabled by Meta Pixel." *Tenet Healthcare Corp.,* 789 F. Supp. 3d at 853–54. In *Tenet Healthcare* all four plaintiffs alleged that after visiting the Tenet Health website they "began receiving targeted advertising" directed toward either their medical conditions, specific medication prescribed by Tenet Health, childbirth, or their wound care treatment. *Id.* at 828-829.

Natural Cycles relies on *Rusow v. SkinSpirit Essential LLC*, where the plaintiff pleaded

"[Rusow] has received advertisements marketing various cosmetic medical procedures, specifically targeted at [Rusow] *as a result of* [SkinSpirit's] disclosure of her medical booking information to LinkedIn and Google." No. 24-CV-09317-CRB, 2026 WL 453476, at *1 (N.D. Cal. Feb. 18, 2026) (emphasis added). In its earlier ruling, the court had found "Rusow alleges that she saw targeted advertisements, which would have put a reasonable user on inquiry notice." *Rusow*, 2025 WL 4657637, at *8 (N.D. Cal. Oct. 15, 2025)[5]. In its subsequent order, the court declined to disturb its earlier ruling because the plaintiff "did not add the allegations that the Court required." *Rusow*, 2026 WL 453476, at *1-2.

*Rusow's* reasoning depends on *Saedi v. SPD Swiss Precision Diagnostics GmbH*, and *Saedi* is materially distinguishable. No. 2:24-CV-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025). There, the court found plaintiff was on constructive notice of defendant's privacy policy, and the targeted ads "coupled with the explicit information on the Website regarding data collection and sharing" supported "only one conclusion"—that plaintiff was on inquiry notice. *Id.* at *10. Further, *Saedi* itself indicated, when discussing fraudulent concealment, had the defendant made an affirmative misrepresentation to plaintiff, like here, the result may have been different. *Id.* at 11. ("[T]o the extent that the language in the Supplemental Health Privacy Policy could be affirmatively misleading . . . that policy was not in place when Plaintiff visited the Website").

To the extent *Rusow* could be read to stand for a general proposition, that receiving an ad is itself sufficient to put a consumer on "inquiry notice" of wrongdoing as a matter of law, such a reading is not warranted, and the Court should not adopt it. The *Rusow* plaintiff specifically alleged that the targeted ads she received were "*as a result of* [SkinSpirit's] disclosure of her medical booking information." *Rusow*, 2026 WL 453476, at *1 (emphasis added). S.S. makes no such allegation here.

Even if the Court were to accept such a premise, the facts alleged here are materially distinct.

---

[5] On this basis the Court distinguished *Gaige*, 2025 WL 559719, *B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024), and *FullStory*, 712 F. Supp. 3d 1244, which all found tolling under similar circumstances, by stating "the plaintiffs in *Gaige*, *Desert Care*, and *FullStory* did not" allege they saw advertisements. *Id.* But, as shown above, the *Gaige* plaintiffs did indeed allege that they saw targeted advertisements. *Gaige*, 2025 WL 559719, *1.

S.S. alleged Natural Cycles affirmatively represented it would honor her choice to "reject" cookies. Compl. ¶ 174. She "believed that Natural Cycles honors consumers' choices to reject non-essential cookies" and she "believed her information would stay private" particularly in light of Natural Cycles touting its data privacy protections. Compl. ¶¶ 172-175; ¶ 195. Under these circumstances any suspicions from the ads would be countered by her rejection of cookies coupled with Natural Cycles' privacy promises. *Cf. Gabrielli*, 815 F. Supp. 3d at 869–870 (where plaintiff rejected cookies, the companies disclosures were not sufficient to put him on inquiry notice); *FullStory, Inc.,* 712 F. Supp. 3d at 1255 (tolling warranted where defendants indicated "that the type of personal and healthcare information at issue here would *not* be shared with third parties.")

Because S.S. sufficiently pleaded facts to invoke the discovery rule and toll the statute of limitations for her CIPA claims and by extension her other claims based on the same facts, the Court need not reach fraudulent concealment. For completeness, Plaintiffs address it below.

S.S. also sufficiently alleges fraudulent concealment. To plead fraudulent concealment, a plaintiff must allege "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1070 (N.D. Cal. 2021). S.S. meets each element.

*First*, S.S. alleges Natural Cycles affirmatively misrepresented to website visitors that users could "reject" all non-essential cookies and touted its data privacy protections. *See*, *e.g.,* Compl. ¶ 195 ("Natural Cycles also made deliberate efforts to conceal from users that it was sharing intimate reproductive health and sexual information with third-parties by touting its data privacy protections and not honoring its own purported cookie opt-out mechanisms.").

*Second*, S.S. had no actual or constructive knowledge of the facts giving rise to her claim. Compl. ¶¶ 194-198.

*Third*, because of those affirmative misrepresentations, and S.S.'s lack of technical expertise, S.S. acted diligently in bringing this action after learning of Natural Cycles' privacy violations shortly before filing. Compl. ¶ 196. *See Brown*, 525 F. Supp. 3d at 1070-1071 (finding plaintiffs adequately alleged that plaintiffs' claims were tolled under fraudulent concealment where

these three elements were adequately pleaded); *see also Gaige,* 2025 WL 559719, at *4 (finding plaintiff sufficiently pleaded fraudulent concealment where defendant "took affirmative steps to hide its tracking activities, including embedding invisible Tracking Technologies that were deliberately designed to operate without users' knowledge or consent" he could not have discovered the conduct sooner, and filed the action soon after learning of the conduct). As such, Natural Cycles' fraudulent concealment tolled the statute of limitations.

**C. Plaintiffs S.A.'s and M.F.'s CIPA claims are timely even absent tolling, and A.S.'s claims are tolled for the same reason as S.S.'s.**

Natural Cycles argues that S.A.'s, A.S.'s, and M.F.'s CIPA claims are time-barred under CIPA's one-year statute of limitations because, under its inquiry-notice theory, their first use of the Natural Cycles' services occurred more than one year before filing. Mot. at 13. The argument fails on two independent grounds.

Plaintiffs A.S., S.A. and M.F. are entitled to the same tolling as S.S. for the reasons stated above. *See* section IV.B, *supra*.

S.A.'s and M.F.'s CIPA claims are independently within the one-year statute of limitations even without tolling. S.A. alleges she used the app through approximately March 2025, within a year of filing (Compl. ¶ 164), and M.F. alleges she began using the app in January 2024 and she "has since ceased using the app."[6] Compl. ¶ 186. Plaintiffs further alleged that the conduct was ongoing and that third party Mixpanel's trackers fire at every stage of user interaction, collecting reproductive and sexual health data even when users explicitly reject non-essential cookies. Compl. ¶¶ 4, 46-70.

Since these are separate, recurring invasions of the same right, any claims that accrued within the statutory period are not time barred. *Aryeh v. Canon Bus. Sols, Inc.*, 55 Cal. 4th 1185, 1199 (2013). Indeed, the Ninth Circuit has held, for Wiretap Act claims, that "each interception is a discrete violation" with its own statute of limitations. *Bliss v. CoreCivic, Inc.*, 978 F.3d 1144,

[6] That M.F. does not allege the precise date she stopped using the app is of no moment for purposes of Natural Cycles' motion. "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute [of limitations] is apparent on the face of the complaint." *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.,* 720 F.3d 1174, 1178 (9th Cir. 2013) (alteration in original) (internal quotation marks and citation omitted).

1148 (9th Cir. 2020). And the "Ninth Circuit's reasoning applies to Plaintiff's [CIPA] claims, which also refer to 'communication' or 'act' in the singular." *Calhoun v. Google LLC,* 526 F. Supp. 3d 605, 625 (N.D. Cal. 2021) (*citing* Cal. Penal Code § 631(a) (prohibiting the unauthorized interception of "any message, report or communication"); *id.* § 632(a) (prohibiting the interception of a "confidential communication")). Since some interceptions occurred within the year preceding the filing of this case, those CIPA claims are timely even if earlier interceptions are time-barred.

**D. Plaintiffs sufficiently allege the "in-transit" requirements of § 631(a).**

Natural Cycles sole challenge to Plaintiffs' § 631(a) claims is that Plaintiffs failed to plead a predicate violation and thus cannot be derivatively liable. Mot. at 13-16. They have. Plaintiffs sufficiently pleaded facts to satisfy the "in transit" requirement of § 631(a), and thus have plausibly alleged a predicate violation to hold Natural Cycles derivatively liable[7]. Cal. Penal Code § 631(a). Plaintiffs do not assert that Natural Cycles violated the first clause of § 631(a). Rather, Plaintiffs allege the predicate act is a violation of the second clause, which is violated when an entity "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . ." Cal. Penal Code § 631(a); Compl. ¶¶ 259, 266-269. Natural Cycles argues Plaintiffs must also allege the third-party trackers undertook "some effort at understanding the substantive meaning of" the data while it was being transmitted, "not after." Mot. at 15. It is wrong. Real-time interception suffices.

Under the second clause, Plaintiffs allege the eavesdropping occurred in "real time" while the communication was "in transit." Compl. ¶¶ 3, 5, 7, 8, 48, 60, 62, 75, 116, 266-67, 269, 275, 286, 291. For instance, Plaintiffs allege "[e]ach data transmission from Natural Cycles to TikTok was sent via HTTP POST request to https://analytics.tiktok.com/api/v2/pixel, allowing TikTok's systems to simultaneously view, read, and store the data." Compl. ¶ 116. They further allege "the

[7] Natural Cycles argues that it "designed its product to comply with the CCPA" and urges Plaintiffs to bring a CCPA claim instead. Mot. at 16. The argument is misguided. The CCPA requires a website operator to honor opt-out of cookie requests, Cal. Civ. Code § 1798.120, yet Natural Cycles continued tracking even after Plaintiffs rejected non-essential cookies. Compl. ¶¶ 53, 59, 78, 144-48. Moreover, the CCPA only provides a limited private right of action and does not make each violation actionable. Cal. Civ. Code § 1798.150(a).

Mixpanel, AddShoppers, Google and TikTok code duplicates and records a user's interaction in real-time as the user navigates the page, including recording any information the user may input or select and records the links the user clicked." *Id.* ¶ 286. "Mixpanel also receives real-time event data for virtually every in-app interaction" (*Id.* ¶ 5) and markets "real-time insights into user behavior." *Id.* ¶ 48. "These events are transmitted directly to Mixpanel at the moment the interaction occurs." *Id.* ¶ 61.

"Allegations that communications are intercepted in real time through the use of computer code provide sufficient factual detail to support the in transit requirement." *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 838 (cleaned up) (collecting cases). "Indeed, a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny Opco, LLC*, No. 3:23-cv-00981-BAS-DDL, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023).

Natural Cycles attempts to raise the bar and require Plaintiffs to plead even more detail to raise a plausible inference, namely that each of the third parties attempted to understand the "meaning of the answers to their onboarding questionnaire, URLs reflecting such answers, and/or information tracked in the Natural Cycles application while it was being transmitted—not after." Mot. at 15. Natural Cycles cites two cases: *Torres v. Prudential Fin.*, Inc., 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025), and *Eating Recovery Ctr.*, 806 F. Supp. 3d at 1118. Both were decided on a full record at summary judgment and are thus irrelevant to pleading requirements.[8] At the pleading stage, courts recognize that whether "information was intercepted by [third party tracker] before it was stored by [company] as Plaintiffs allege, or vice versa, is a question for summary judgment". *See Hazel v. Prudential Fin., Inc.,* No. 22-CV-07465-CRB, 2023 WL 3933073, at *4

[8] Natural Cycles pulls a partial quote from Plaintiffs' allegation and argues the "only logical inference" is that third parties later viewed and used Plaintiffs' information. Mot. at 15 (*citing* Compl. ¶ 229). But this mischaracterizes Plaintiffs' actual allegation: "Natural Cycles **shared this data with third parties who view and read the data in transit**. Upon information and belief, these third parties **also** later viewed and used Plaintiffs and Class Members' information to improve their own software, algorithms, and other business activities to advertise and market its services." Compl. ¶ 229 (emphasis added). Natural Cycles also cites paragraphs 83-84 and 106 of the Complaint, but those allegations discuss *what* AddShoppers and Google did with the data—not *when* they accessed the data.

(N.D. Cal. June 9, 2023).

The only case at the pleading stage that Natural Cycles leans on, *Lewis v. Magnite, Inc.,* found the plaintiffs' § 631(a) claim failed because the plaintiffs did not allege that any contents of a communication were captured. 2025 WL 3687546, at *11-12 (C.D. Cal. Dec. 4, 2025). The court went on to note "for the sake of clarity" that the plaintiffs also failed to allege that any communications were intercepted "in transit." *Id*. at *12. *Lewis* did not require plaintiffs to additionally plead the defendant read or attempted to read those communications in transit. *Id.*

At this stage, Plaintiffs' allegations are sufficient to satisfy the minimal pleading requirements of Rule 8(a)(2). *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1036 (N.D. Cal. 2014) (rejecting argument that emails were not intercepted in transit because "[t]he Court must defer resolution of whether Yahoo accessed the emails only after the emails were on Yahoo's servers until after discovery makes clear where and how Yahoo's scanning technology intercepted the emails.").

As this Court has made clear, a defendant cannot demand a plaintiff allege details about tracking tools that only the defendant and its third-party trackers control to survive a motion to dismiss. *See FullStory, Inc*., 712 F. Supp. 3d at 1259 ("[I]n the absence of discovery [about] how the TikTok Pixels actually work and what information was tracked, it would be premature to hold that TikTok's alleged tracking of the various pages that plaintiff may have visited within Favor's platform when seeking healthcare services cannot constitute an invasion of privacy.") (footnote omitted); *Doe v. Regents of Univ. of Cal*., 672 F. Supp. 3d 813, 819 (N.D. Cal. 2023) (Orrick, J.) ("At the motion to dismiss stage, it is not necessary for plaintiff to provide more specific medical details. . . . To require more would place the burden on her to describe UC Regents' technical systems without the benefit of discovery.") (*citing Reichman v. Poshmark, Inc.,* 267 F. Supp. 3d 1278, 1286 (S.D. Cal. 2017).)

Thus, Plaintiffs sufficiently allege a predicate violation of § 631(a)'s second clause. Because Natural Cycles does not independently contest the clause three and clause four violations Plaintiffs allege, the § 631(a) claim is adequately pleaded to hold Natural Cycles derivatively liable.

**E. The third-party software is a "device" under § 632.**

Natural Cycles' § 632 argument has been rejected by this court. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) (Orrick, J.). This Court has previously ruled that software qualifies as a "device" under § 632. *Id.* In doing so, the Court found Natural Cycles' cases (Mot. at 16-17) distinguishable because they discuss § 637.7—not § 632. *Id. citing In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) and *Moreno v. S.F. Bay Area Rapid Transit Dist.,* 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017).

Indeed, both Judge Davila and Judge Corley, the very judges who authored the above opinions, have since penned opinions holding that software qualifies as a "device" under § 632 and it does not require a physical device. *See, e.g., Libman v. Apple, Inc.,* No. 22-CV-07069-EJD, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) ("Recent decisions in this Circuit have rejected Apple's interpretation and found that 'software is a device under section 632(a).'"); *R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at *8 (N.D. Cal. Mar. 28, 2025) (plain language of § 632 "reaches communications made through technology or means not enumerated since the statute includes communications made 'by means of . . . [an] other device.'") (alteration in original).

Natural Cycles asserts *noscitur a sociis* should "be understood to require a physical device" and the Court should reconsider its prior holding. Mot. at 17 (citing *Meta Platforms*, 690 F. Supp. 3d at 1080.) Natural Cycles does not develop this point. *Id.* In any event, the canon does not apply.

*First*, the canon is simply an interpretive aid that can be used when there is an ambiguous term. *Oden v. Bd. of Admin.,* 23 Cal. App. 4th 194, 203 (1994); *United States v. Stevens,* 559 U.S. 460, 474, 130 S. Ct. 1577, 1588, (2010). Natural Cycles does not point to any such ambiguity. Here, the catchall provision—"or other device"—is broader than the specific enumerated examples that precede it. Cal. Penal Code § 632(a). The canon does not "apply to restrict the plain meaning of words" and "may not be used to create doubts[.]" *People v. Lucero*, 41 Cal. App. 5th 370, 398-99 (2019).

*Second,* Natural Cycles relies on *People v. Drennan*, but to the extent relevant, *Drennan* supports the numerous courts that have found software is a device under § 632. 84 Cal. App. 4th

1349, 1356 (2000). The court noted § 632 "makes clear" the communication may be carried on by a device "which transmit[s] information by sound or symbol." *Id.* Software is such a device. *Drennan* did not apply *noscitur a sociis* to find that the statute limits the type of device that transmits this information. To the contrary, the statute "protects the content of the communication from being recorded," not the form of device or recording mechanism used to capture that communication. *Id.*

**F. Plaintiffs allege a pen register claim under Section 638.51.**

Natural Cycles acknowledges this Court has "allowed Section 638.51 claims to proceed past the pleadings stage based on facts similar to those alleged here." Mot. at 17; *see Gabrielli,* 815 F. Supp. 3d at 871 ("Haleon argues that internet technologies are not 'pen registers.' . . . This argument has been considered and rejected multiple times."). Yet Natural Cycles claims "the courts did not fully consider, the precise arguments raised by Natural Cycles here . . . ." Mot. at 17.

But "[n]umerous courts in this district and elsewhere have already found pixels to be 'pen registers' at the pleading stage, and [Natural Cycles'] arguments tread no new ground." *Semien v. PubMatic Inc*., No. 25-CV-03164-SI, 2026 WL 216333, at *10-11 (N.D. Cal. Jan. 27, 2026). The *Semien* court rejected the same four arguments Natural Cycles makes here: (1) that the pixel only records incoming information; (2) that the text and legislative history of Section 638.51 limit its application to "the telephone line," (3) that Plaintiffs' reading would "'essentially outlaw the internet' by opening every single website to liability;" and (4) that the reading creates conflict between the California Penal Code and the CCPA. *Id.* Pubmatic, like Natural Cycles, relied on various state court decisions to support its interpretation. *Id.*

Natural Cycles first argues "the statutory text on its face targets telephone technologies" based on language in Section 638.52(d) stating that the court order must include the name and physical location of the "telephone line." Mot. at 18. It next argues that this "focus" is also consistent with the legislative history and cites to several state court decisions limiting the "pen register law to telephonic technologies." Mot. at 18, n.5.

"[Natural Cycles'] first two citations actually undermine its arguments." *Riganian v. LiveRamp Holdings, Inc.,* 791 F. Supp. 3d 1075, 1093 (N.D. Cal. 2025). "Section 638.50 defines a 'pen register' as 'a device or process that records or decodes dialing, routing, addressing, or

signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication'—without limiting its application to telephones." *Riganian,* 791 F. Supp. 3d at 1093 *citing* Cal. Penal Code § 638.50(b). "By contrast, other sections of CIPA specifically do include language regarding telephones." *Id.* Moreover, "[t]he statutory definition of a pen register is likewise not limited to the type most often utilized by law enforcement." *Shah v. Fandom, Inc*., 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024) "Although [Natural Cycles] points to § 638.52, that section does not alter the definition of a pen register." *Id.*

Further, based on the plain language combined with "the California Supreme Court's pronouncements regarding the broad legislative intent underlying CIPA to protect privacy," and "the California courts' approach to updating obsolete statutes in light of emerging technologies," (*Shah*, 754 F. Supp. 3d at 930-931), "other federal courts have interpreted the plain language of Section 638.50 expansively to find that 'pen registers' includes data collection tools beyond those the record information from telephones." *Riganian,* 791 F. Supp. 3d at 1093. *Riganian* rejected the same three arguments Natural Cycles makes here: (1) that other statutory provisions enacted at the same time as the pen register prohibition (specifically Section 638.52, subdivisions (c) and (d)) discuss pen registers in relation to a telephone number or telephone line; (2) the section's legislative history limits pen registers to telephone technology; and (3) that a California Superior Court decision held "pen register" refers to devices that record information only from telephones, not internet communications. *Id.*

Similarly, Natural Cycles argues that "law's consent defense only extends to 'providers of electronic or wire communication service,' and that term does not cover most website and application operators." Mot. at 19. But Natural Cycles cites no support for such proposition, does not explain how it reconciles with the statute's plain language, and does not explain why Natural Cycles itself falls outside the definition of a provider. Natural Cycles is merely repackaging an oft-rejected argument. Courts have rejected the argument that a website operator is the "user" rather than the "provider" for purposes of the consent defense. *See, e.g., Hassid v. Alex & Ani, LLC,* 816 F. Supp. 3d 1196, 1205 (C.D. Cal. 2026) (rejecting website operators argument that it is the "user"

rather than the provider for purposes of consent); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) (same).

Natural Cycles further argues that the rule of lenity protects Natural Cycles from liability for violating "a criminal statute aimed at telephones and law enforcement investigations." Mot. at 19. Courts have consistently rejected this argument because Natural Cycles "has not established that any 'grievous ambiguity' [exists] in the statute's express language." *Riganian*, 791 F. Supp. 3d at 1094; *Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 2886399, at *9 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied*, No. 25-CV-01094-CRB, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026) ("the statute contains no grievous ambiguity: its language, structure, history, and purpose are sufficiently clear, and they leave no need for the Court to merely speculate about its applicability"); *Nelson v. Reddit, Inc.,* No. 25-CV-1470 JLS (AHG), 2026 WL 445627, at *6 (S.D. Cal. Feb. 17, 2026) (holding rule of lenity inapplicable because "there is no ambiguity regarding the application of §§ 638.50 and 638.51" to modern technologies) (collecting cases).

Natural Cycles next argues that Plaintiffs' interpretation of the pen register statute "would nullify the CCPA" because if section 638.51 applies to tracking software "the CCPA's provisions permitting reasonable collection of such data are a nullity." Mot. at 20 citing *Scharon v. Paramount Glob.,* 2025 WL 2996812, at *2 (Cal. Super. Ct. Oct. 3, 2025). This argument lacks merit. Indeed, the CCPA provides that "in the event of a conflict between other laws and the provisions of [the CCPA], the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." Cal. Civ. Code § 1798.175. "Thus, by Defendant's own argument, CIPA should control." *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (rejecting the assertion that if Section 638.51 applies to tracking software it would "supplant" the CCPA framework for notice and "opt out").[9]

---

[9] Natural Cycles argues that unique user and device identifiers, and IP based geolocation data are not "akin to 'the numbers dialed on a telephone'" and cannot "underlie a pen register claim because it does not involve the recording of outgoing information." Mot. at 20 n. 6. Courts have rejected this too. "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah*, 754 F. Supp. 3d at 929. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element." *Id. See also Harris v. iHeartMedia, Inc.*, No. 25-CV-6038-EKL, 2026 WL 247875, at *2–3 (N.D. Cal.

Natural Cycles largely relies on statutory phrases plucked from their context, legislative history and public policy arguments. "The reliance on these sources is understandable as the case law is not in Defendants' favor. Indeed, it uniformly supports the opposite outcome." *Bradshaw v. Lowe's Cos., Inc.,* No. 25CV0742 DMS (MMP), 2025 WL 3171740, at *7 (S.D. Cal. Nov. 12, 2025) (rejecting argument that Section 638.51 applies only to telephone surveillance).

**G. Plaintiffs adequately pled intrusion upon seclusion claims.**

Defendant's sole argument in support of dismissal of Plaintiffs' intrusion upon seclusion claim is that it could not have "intruded" because Plaintiffs voluntarily provided their information to Natural Cycles. Motion 20-21. That mischaracterizes the intrusion. Plaintiffs allege intrusion via interception. Natural Cycles deployed hidden code on its website and app that transmitted Plaintiffs' sensitive reproductive health information and personally identifiable information to third parties without Plaintiffs' consent or knowledge, *even after they explicitly rejected cookies*. Compl. ¶¶ 4, 6, 53, 59, 78, 144-48, 153. Natural Cycles and third parties exploited that data for marketing purposes, i.e., a purpose unrelated to providing health care services. Compl. ¶¶ 70-73; 78-87; 106, 126, 223.

Courts in the Ninth Circuit, including this Court, routinely find that these allegations give rise to an intrusion upon seclusion claim at the pleading stage, even where consumers have voluntarily shared their protected medical information with the defendant. *See Gabrielli,* 815 F. Supp. 3d at 868 (intrusion upon seclusion adequately pled where consumer alleged that healthcare company allowed third parties to track and collect consumer's private communications as plaintiff rejected all cookies); *FullStory*, 712 F. Supp. 3d at 1257 (rejecting the argument that agreement to telemedicine privacy policy defeats intrusion on seclusion claim as a matter of law); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 974 (S.D. Cal. 2023) (intrusion upon seclusion claim adequately pled where defendant transmitted patients' medical conditions to Meta for targeted advertising); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *9 (C.D. Cal. 2024) (same); *see also Opperman*

---

Jan. 29, 2026) (rejecting the argument that pen registers only collect outgoing data and concluding third party trackers are plausibly pen registers); *Nelson*, 2026 WL 445627, at *4 ("The Court is not persuaded that the definition of pen register requires the collection of only outgoing data").

*v. Path, Inc.*, 205 F. Supp. 3d 1064 (2016) (denying defendant's motion for summary judgment notwithstanding plaintiffs' voluntary provision of address book data).

Defendant cites a single case, *Saedi*, 2025 WL 1141168. *Saedi* is an outlier. *Id.* at *8. The court noted that "one cannot logically intrude into communications to which they are a party[.]" *Id.* But Plaintiffs do not complain about Natural Cycles receiving the data. Again, the intrusion occurred via interception of their reproductive and sexual health data.[10]

**H. Plaintiffs' California Constitutional Privacy Claim (Article I, § 1) survives because Defendant only challenges the remedy, not the allegations.**

Natural Cycles does not challenge whether Plaintiffs have pleaded the elements of an invasion of privacy claim under Article 1, § 1 of the California Constitution. Instead, Natural Cycles attacks only the remedy, arguing that Plaintiffs seek damages even though only injunctive relief is available. That argument overstates the law and does not justify dismissal.

California law does not establish a categorical rule that damages are unavailable. The California Supreme Court has not decided whether the constitutional privacy provision can, by itself, support a damages remedy, and California courts have recognized the question remains unsettled. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (citing *Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 313, n. 13 (2002) ("suggesting it is an open question whether the state constitutional privacy provision, which is otherwise self-executing and serves as the basis for injunctive relief, can also provide direct and sole support for a damages claim")); *see also Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 392 (2017) ("Whether there is a cause of action for damages for violations of the right to privacy under article I, section 1, of the California Constitution is not entirely settled.")

Defendant cites *Regents,* 672 F. Supp. 3d 813, 820, where this Court cited *Clausing v. S.F. Unified School Dist.*, 221 Cal. App. 3d 1224, 1238 (1990) for the proposition that "[c]itizens can seek to enjoin the government from violating [the right to privacy] but cannot seek damages." *Regents*, 672 F. Supp. 3d at 820. The Court dismissed the constitutional privacy claim based on public entity immunity grounds that do not apply to Natural Cycles, a private defendant. *Regents,*

[10] The remaining cases Natural Cycles cites are out-of-circuit and apply non-California law. Mot. at 21.

672 F. Supp. 3d. at 815 ("On some claims—CIPA, privacy under the California Constitution, and those based upon an implied-in-law or quasi-contract theory—UC Regents is immune as a public entity"). Thus, this Court did not wade into whether damages are available against a private defendant under the California constitutional privacy claim.

In any event, the Court should allow Plaintiffs' constitutional claim for damages to proceed because it involves the same core factual issues as the common law invasion of privacy and the statutory privacy claims, and therefore will "not materially expand the scope of potential liability or the factual issues presented in this action." *See In re BetterHelp*, 2024 WL 3416511, at *2–3 (declining to dismiss constitutional privacy claim for damages at the pleading stage because it would "not materially expand the scope of potential liability or the factual issues presented in this action.")

**I. Plaintiffs can recover for unjust enrichment.**

Plaintiffs may plead unjust enrichment in the alternative. *See Astiana v. Hain Celestial Grp.*, *Inc*., 783 F.3d 753, 762 (9th Cir. 2015). Natural Cycles argues that for an unjust enrichment claim Plaintiffs must "plausibly allege" they lack an adequate remedy at law. Mot. at 22 (*citing Sonner v. Premier Nutrition Corp.,* 971 F.3d 834,844 (9th Cir. 2020).) But as Natural Cycles acknowledges, Plaintiffs do allege that "Plaintiffs and Class Members have no adequate remedy at law[.]" Mot. at 23 *citing* Compl. ¶ 277. No more is required. *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (Orrick, J.) ("[B]ecause *Sonner* was decided at a later posture, I agree with the plaintiffs that, if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case"). Further, "multiple judges within this district have begun to reverse course from their previous decisions requiring stricter allegations at the pleading stage to establish equitable jurisdiction over claims for past harms." *Crowder v. Shade Store, LLC,* No. 23-CV-02331-NC, 2025 WL 754067, at *2 (N.D. Cal. Mar. 10, 2025).

Further, as opposed to standalone equitable claims, unjust enrichment is an equitable remedy that lies only where the plaintiff lacks an adequate remedy at law. Consequently, Plaintiffs do not even need to specifically plead an inadequate remedy at law for unjust enrichment claims to proceed.

*Veritas Techs. LLC v. Cushman & Wakefield, Inc.*, No. 21-CV-01467-CRB, 2022 WL 222527, at *11 (N.D. Cal. Jan. 25, 2022) (holding plaintiffs did not need to specifically plead they "lacks an adequate remedy at law before it can request restitution through an equitable claim for unjust enrichment"). Indeed, "*Sonner* considered UCL and CLRA claims, not an unjust enrichment claim." *Id.* Plaintiffs' unjust enrichment claim survives.

**V. CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss. In the event the Court finds any deficiencies in the pleadings, Plaintiffs respectfully request leave to amend.

Dated: May 14, 2026

Respectfully submitted,

By: *<u>/s/ Grace E. Parasmo</u>*

Grace E. Parasmo (State Bar No. 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (State Bar No. 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
8149 W. Santa Monica Blvd., #611
West Hollywood, California 90046
Telephone: (646) 509-3913

*Attorneys for Plaintiffs S.A., S.S., A.S., and M.F., individually and on behalf of all others similarly situated*